329 So.2d 621
**John Lamar JOHNSON**

v.

**STATE.**

**4 Div. 355.**

Court of Criminal Appeals of Alabama.

March 30, 1976.

Samuel L. Adams, Dothan, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

Appellant was convicted of murder in the first degree and sentenced to life imprisonment in the penitentiary.

■ The alleged victim was his wife. Except as to the whereabouts of appellant at the time of the homicide and as to the identity of the murderer, little conflict, if any, is to be found in the evidence.

About 9:30 P.M. November 29, 1974, the body of the victim was observed in the front of a driveway at 302 North Lena Street in Dothan. A patrol car was approaching at the time, and it was flagged down. Her head was battered and bloody; there were numerous bruises and abrasions on the right and left forearms. An autopsy showed that there was a massive compound fracture of the skull.

Upon defendant's arrest later that night, his clothes that he had on at the time, including his boots, were removed from him. They were afterwards examined by a serologist, who testified that there was blood and brain tissue on them.

A sergeant in the criminal investigation division of the Dothan Police Department testified that on December 2, 1974, he searched a pile of leaves behind a dentist's office about three blocks from the scene of the crime and found a blue denim jacket in which were rolled up a large ball-peen hammer and a pair of tan gloves, on which he

observed what appeared to be brain tissue and several strands of what appeared to be light-colored hair. They were turned over to the same serologist who examined and testified as to blood and brain tissue on the clothes of defendant, who also testified that the denim jacket and the ball-peen hammer revealed the presence of brain tissue thereon and human blood of the same type, group "O," found upon defendant's clothes and boots.

There was evidence that within a few weeks prior to the alleged crime defendant was heard to threaten his wife with cutting her head off and setting it on the table to look at and that "he was going to fix her face."

Miss Carla Hargue testified that as she was sitting in an automobile in front of 302 North Lena Street she noticed a man behind some bushes at the house next door. She watched him for about fifteen minutes. The man crawled out into the yard and hid behind a tree. As the witness and the others in the automobile rode down the street, the man jumped from behind the tree with a hammer and chased the automobile. The occupants of the automobile drove to a service station and called the police. They then returned to 302 North Lena Street and the man jumped out of some bushes on the opposite side of the street and chased them down the street again. The occupants rode around the block and upon their return they noticed something lying in the street. At that time the witness said she saw the man run from behind a house at the corner of Adams and Lena Streets running to the south. That night, after defendant was arrested, the witness said she was shown a picture that she identified as a photograph of the man whom she had seen with the hammer that night. Upon being asked as a witness on the trial whether she could identify defendant as the man she had seen, she replied that she could not. According to the undisputed evidence, there was a great change in the appearance of defendant between the time of his arrest and the time of his trial. At the time of his trial his hair was cut short, collar length. At the time of his arrest, his hair was longer "and he had a soiled appearance and his hair appeared to be dirty and oily. It was not combed as neatly."

Defendant took the stand and denied that he killed his wife. He denied being present at the scene of the crime. He was supported as to an alibi to some extent by five other witnesses. Only one of them, however, accounted for his whereabouts elsewhere for a period of about thirty minutes before the evidence indicated that his wife was killed. The alibi testimony in general was to the effect that he was in the general area of that part of Dothan where the crime was committed during the early part of the night of November 29, 1974.

The evidence was sufficient to support the verdict of the jury.

■ Appellant complains of the admission in evidence of the blue denim jacket and the ball-peen hammer and gloves found three days after the homicide about three blocks from the murder scene. Appellant cites *Dorch v. State*, 40 Ala.App. 475, 115 So.2d 287, in support of this contention. We think *Dorch v. State* supports an opposite view. It was there stated:

"Inadmissibility because of remoteness is confided largely to the trial judge's discretion. McElroy, Law of Evidence in Alabama, § 21, pp. 6 and 7; 22 C.J.S. Criminal Law § 638."

In *Dorch* a key was found in the vicinity eight days after the alleged crime. It was held that the trial court was not in error in admitting evidence as to the key.

■ It is argued by appellant that the admission in evidence of the results of the tests run on the clothing of appellant was erroneous, by reason of some evidence that the officers did not wash their hands be-

tween the time one of them handled the victim's body and another had collected blood samples and particles of brain tissue from the body and the time that they removed appellant's clothing. The one who touched the body said that he only touched it "On the right arm." Upon being asked whether he got anything on his hands at the time he touched the body, he replied that he did not. The other officer did not touch the body and had little, if anything, to do with taking the clothes from the other officer after they had been removed from defendant, other than placing them in plastic evidence bags and sealing and labeling the bags. The notion that there could have been some blood, hair or tissue removed from the corpse, after it was viewed by officers and others, to the clothes of defendant before his clothes were placed in plastic evidence bags is ingenious, but it is not based upon any reasonable view of the evidence, in our opinion. The items of clothing mentioned were properly admitted in evidence.

■ On cross-examination of defendant, the State developed that he had been convicted of grand larceny in 1966 and of burglary in 1965. On redirect examination, he was asked, "Johnny, when was the last time you got into any trouble?" Before he was allowed to fully answer, he was asked on redirect examination, "I am talking about when you got convicted of any crime?" It appears from the record that there was not complete understanding between defendant and the attorney conducting the redirect examination of him, but it seems clear that his testimony was subject to a reasonable interpretation that he had not been convicted of a crime since he was convicted of grand larceny, which he then said was in 1965, rather than in 1966, as he had testified on cross-examination. On re-cross-examination, the following occurred:

"Q. Weren't you convicted in June of 1968 for Resisting Arrest?

"MR. ADAMS: Judge, I object.

"MR. SORRELLS: He opened it up.

"MR. ADAMS: Judge, it is not a crime involving moral turpitude.

"THE COURT: No, it is not a crime involving moral turpitude, but you asked him when was the last time as I remember when he was in trouble.

"MR. ADAMS: I changed that, I think to when was the last time he was convicted of any crime.

"THE COURT: I am overruling the objection. You opened it up."

Defendant did not have then, and appellant does not have now, just grounds for complaint as to the evidence called for, as the door was opened for such evidence by questions asked defendant on redirect examination. *Vincent v. State,* 231 Ala. 657, 165 So. 844; *Manassa v. State,* 47 Ala. App. 287, 253 So.2d 356; *Curtis v. State,* 44 Ala.App. 335, 208 So.2d 245. Furthermore, the question objected to was never answered. Other questions on the subject were thereafter asked, which were answered but to which no objection was made.

■ The contention most strongly insisted upon by appellant is that evidence was erroneously admitted pertaining to an identification by the witness Carla Hargue of a photograph as a picture of the man the witness said she had seen with a hammer in his hand a short while before the body of the victim was discovered. She testified *without objection* that she was shown a group of photographs by Detective Lynn and that she picked out a photograph that she "identified as being the man she saw." Thereafter Detective Lynn testified that after arresting defendant on the night of November 29, 1974, he took a photograph of him and later that evening showed Miss Hargue a group of photographs, including defendant's photograph. He was asked by the State, "Did she make an identification?", to which defendant

objected and asked for a voir dire examination, out of the presence and hearing of the jury, which was conducted. On the voir dire examination by the defense it was developed that the first time Mr. Lynn talked with Miss Hargue she looked through approximately 450–500 pictures and picked out no picture, that defendant's picture was not in that group. About an hour later, he showed her approximately 40 pictures, including the defendant's picture; he said she picked out defendant's picture and that she picked out another picture as looking like the person she saw on the occasion. Thereupon defendant's counsel moved to exclude any testimony as to the picture "because there were two picked out." The court sustained the objection. Then on voir dire examination of Officer Lynn by the State, it was developed that when she picked the "other picture out" she had not "gotten to the defendant's picture," that as to the other picture she did not say "That was the man" but that "It resembled him," but when she "got to the picture of the defendant," she said "that was him." Thereafter the trial judge took part in the voir dire interrogation, as well as counsel for the State and counsel for defendant. The voir dire examination was concluded as follows:

"THE COURT: Do you have anything else on voir dire?

"MR. ADAMS: No, sir, I would still like to state my objection, as to why, if the Court would like to hear it, the reason she picked out two pictures and not just one. She said one looked similar to it, and the Court knows that as a positive identification, it was not, and it was two pictures picked out.

"THE COURT: I understood the second was a positive identification.

"MR. ADAMS: The two were picked out and she said they were similar and as to that identification, I don't think it is proper to admit to the jury, and I would also like to look at the pictures of the defendant that she was shown. As the Court knows, the mug-shot pictures or any rogue gallery pictures are not admissible to the jury anyway. And also, as a third ground, the lady could not identify the defendant here in Court and that picture very much—well, his face hasn't changed a bit.

"THE COURT: I am going to overrule your objection for whatever probative it has. I will allow you great latitude on cross-examination of the witness.

"MR. ADAMS: All right. I would like to place an exception in the record.

"THE COURT: All right, let the jury come."

The next, and only other, time there was any reference to an identification was when Detective Lynn testified upon being recalled by the State. Then the following occurred:

"Q Did she identify one of the photographs that you showed her?

"MR. ADAMS: I object to this, Judge, as he has already testified as to this, she testified as to two pictures.

"MR. SORRELLS: Judge, I am getting to the question that he has not testified to.

"THE COURT: Well, if you don't, I am going to overrule it and sustain a Motion to strike.

"Q Do you have that photograph that has been identified?

"A Yes, sir.

"Q Is that photograh here that she identified?

"A Yes, sir.

"Q Who is that photograph of?

"MR. ADAMS: Judge, I object. It is repetitious. She picked two pictures out.

"MR. SORRELLS: Judge, I don't recall that being in testimony.

"THE COURT: You don't recall what?

"MR. SORRELLS: I recall the testimony being that she picked out two pictures, but she didn't identify which pictures. I don't recall him testifying as which one she picked out, and identified. That is the only question I am asking.

"THE COURT: Officer Lynn, you say that this is a picture that she definitely identified?

"A  Yes, sir.

"THE COURT: Alright, your next question was what?

"MR. SORRELLS: Who is that a picture of?

"THE COURT: Overruled.

"Q  Who is that a picture of?

"A  A picture of Johnnie Lamar Johnson."

Appellant urges that the evidence relative to the photograph of defendant as noted above was not admissible, "as being hearsay and extra judicial identification." Appellant urges that *Aaron v. State*, 273 Ala. 337, 139 So.2d 309, supports his view. There it was stated that the general rule is that evidence by a third party of an extrajudicial identification is admissible in rebuttal of testimony tending to impeach or discredit the identifying witness, or to rebut a charge, imputation or inference of falsity, but appellant argues that no such circumstance existed in this case.

We are somewhat at a loss to determine what defendant was objecting to on the trial, as we are somewhat at a loss to determine what the State was attempting to show, as to the particular photograph. It was handled on the trial by counsel for the State and counsel for defendant and was observed by the court. It probably could not have been properly introduced in evidence, over objection of defendant, while Miss Hargue was testifying, for it had not then been shown that it was a picture of defendant, but we see no basis for an objection on the ground of hearsay, as an extrajudicial identification, to evidence by the witness Miss Hargue that the photograph was a true likeness of the man she saw with a hammer, when coupled with testimony of Detective Lynn, who took the photograph of defendant, that it was a picture of defendant. That could not involve any question of hearsay or extrajudicial identification, and why that course was not followed we do not know. There does not seem to have been any question about the accuracy of Detective Lynn's testimony that it was a photograph of defendant, and there does not seem to be any question as to Miss Hargue's judgment or determination that it was a picture of the man she saw under extraordinarily suspicious circumstances.

We are called upon by appellant to reverse the trial court in overruling defendant's objections to testimony relative to the picture on a ground that was not assigned on the trial, or even suggested. Defendant then emphasized a contention that the witness had identified another picture, not of the defendant, as one resembling the man she saw with the hammer. On the trial, defendant also urged that "the mug-shot pictures or any rogue gallery pictures are not admissible to the jury anyway." There is no evidence that the photograph was a "mug-shot" picture or a "rogue gallery" picture. It is clear that there was no evidence whatever to indicate any suggestiveness to Miss Hargue in the photograph-viewing procedure. When the matter of the photograph was last presented on the trial, defendant objected on the ground that it was repetitious. Whether a repitious question should be allowed is within the discretion of the trial court. *Curtis v. State*, 44 Ala.App. 335, 208 So. 2d 245.

We cannot place the trial court in error for overruling questions to which untenable grounds only were assigned.

Our review of the evidence fails to find any error prejudicial to defendant. The judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

AFFIRMED.

All the Judges concur.