BOOKOUT, Judge.
Robbery; sentence: ten years imprisonment.
*49 At about 7:45 P.M. on December 9, 1975, four men entered a Majik Mart in Birmingham. Mrs. Lillie Prather, the store cashier, testified that one of them reached across the counter and flipped the quarters from the cash register out over the floor, while one of the others went behind the counter, grabbed her around the neck and forced her into the back room of the store. Mrs. Prather was unable to positively identify the appellant as one of the four. However, two plain clothes policemen, H. L. Snow and John Wayne DeLoach, who were outside the store at the time of the robbery positively identified the appellant as the one who forced Mrs. Prather into the back room. Officer Snow testified that after one of the four men took money from the cash register (approximately $80) all four ran out the front door and split up with two going in each direction. One of the four was shot and killed, and the appellant was arrested in front of the store.
The appellant testified that he and two friends, Dennis Carter and Christopher Patterson, were in the store to buy a bottle of wine at the time of the robbery. He stated that he was not connected in any way with the robbery, but that he ran merely because he was afraid when he saw three other men attack Mrs. Prather. On cross-examination of the appellant, the prosecution elicited the fact that neither Carter nor Patterson were presently in attendance at the trial (apparently as witnesses).
During the earlier cross-examination of Mrs. Prather and the two officers, defense counsel had Dennis Carter step to the door of the courtroom and had asked each witness if they could identify Carter as having been at the scene of the crime. None could identify him. Carter had not been subpoenaed, but apparently was present during the first day of the trial to testify for the appellant. After being made aware, out of the presence of the jury, of the possible self-incriminating nature of his testimony, Carter declined to testify.
The only issue presented for review concerns the failure of Carter to testify after the jury became aware that he was a potential defense witness.
Both the appellant and the appellee cite Waller v. State, 242 Ala. 1, 4 So.2d 911 (1941) for the proposition that, if a party has a witness possessing peculiar knowledge of the transaction and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is a ground of suspicion against him . . . .” Both parties cite Slater v. State, 43 Ala.App. 513, 194 So.2d 93 (1967) for the proposition that, “. . the affected party has the right to explain away any unfavorable inference which might be drawn against him by showing circumstances to account for his failure to produce the witness. . . .”
The parties differ on how the above propositions of law were applied in the instant case. The appellant contends, in essence, that he was not allowed to adequately show the circumstances to account for his failure to produce Dennis Carter as a witness. Ap-pellee contends that adequate explanation was in fact made by the appellant and that the trial judge had a right to cut off repetitious questioning on that issue.
After Carter had been shown to three witnesses for identification purposes, he was questioned by the trial judge outside the presence of the jury. After being fully apprised of his right against self-incrimination, Carter decided not to testify. The next day, on cross-examination of appellant, the prosecution brought out the fact that Carter had not returned to court. On redirect examination by the defense counsel, the following occurred, in reference to Carter’s in camera testimony:
“Q. Did you see him take the stand in the presence of Mr. Black?
“A. Yes.
“Q. Did you hear the Judge advise him of some rights that he had?
“A. Yes.
“Q. Did you hear the Judge advise him that anything he said on the witness stand that tended to incriminate him could be held against him?
“A. Yes.”
On recross-examination by the prosecution, the inquiry continued:
*50 “Q. (By Mr. Black) Did you hear His Honor tell Dennis Carter that he had the right not to incriminate himself?
“A. Right.
“Q. That he had his constitutional rights against self incrimination?
“A. Right.
“Q. He told him that if he testified here in Court — I withdraw that. Did His Honor tell Dennis Carter that if he testified here in Court, that if he was going to testify to something which would tend to incriminate him in this incident that at that time he would have the right to claim his privilege against self incrimination?
“A. Yes.
“Q. And not answer that question?
“A. Yes.
“Q. Did you hear His Honor tell Dennis Carter that the Court was not telling him to testify or whether not to testify? “A. Right.
“Q. Did you hear His Honor tell Dennis Carter that he could testify if he wanted to testify?
“A. Right.
“Q. Dennis Carter is not here today, is he?
“A. No.”
Then on another redirect examination, the subject was again gone into by defense counsel and the ruling complained of arose:
“Q. (By Mr. Pickard) Michael, did you hear the Judge yesterday tell Dennis that if he testified that he was present out there that night that that might be evidence that would tend to incriminate him?
“MR. BLACK: I object to that.
“THE COURT: Sustained. You brought this out, Mr. Pickard. But let’s don’t—
“MR. PICKARD: I have no further questions.
“MR. BLACK: Nothing else.
“MR. PICKARD: Exception to the last ruling.”
It is the opinion of this court that the defense and the prosecution, through the above excerpts from the record, adequately apprised the jury of the circumstances accounting for appellant's failure to produce Carter as a witness. The only clear inference that could have been drawn from the above-quoted excerpts was that after being apprised of his right against self-incrimination, Carter elected not to testify. We do not think the trial judge abused his discretion in refusing to go further into the matter. It is within the trial court’s discretion to allow or exclude a question calling for repetitious testimony. Johnson v. State, 57 Ala.App. 561, 329 So.2d 621 (1976), 19A Alabama Digest, Witnesses, &wkey;245. Certainly the trial judge has no less discretion to limit redirect examination than he has on cross-examination in limiting repetitious testimony. “A trial is not meant to be an eternal phenomenon.” Buckelew v. State, 48 Ala.App. 411, 265 So.2d 195 (1972).
AFFIRMED.
All the Judges concur.