This is an appeal from a conviction of burglary in the first degree and a sentence to imprisonment for ten years. The indictment was brought under Ala. Code 1975, § 13-2-40, which provides:
 "Any person who, in the nighttime, with intent to steal or commit a felony, breaks into and enters any inhabited dwelling house, or any other house or building, which is occupied by any person lodged therein is guilty of burglary in the first degree, and shall, on conviction, be punished, by imprisonment in the penitentiary for not less than 10 years, or as otherwise specified by law."
Defendant challenged the constitutionality of the law by a motion to quash the indictment or, in the alternative, to dismiss the case. He contended that the punishment prescribed by the quoted section of the Code constitutes "cruel and unusual" punishment, prohibited by the Eighth Amendment to the Constitution of the United States, as extended to the states by construction of the Fourteenth Amendment. By standing upon some of the statements made in Furman v. Georgia, 408 U.S. 238,92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), appellant endeavors to apply them to a non-capital crime, the antithesis of the crime or crimes that became the subject matter of the decision inFurman. Although a legislature might conceivably enact a law providing for punishment less than death that would be unconstitutionally "cruel and unusual," it would transgress the principle of separation of powers in both the Constitution of the United States and the Constitution of Alabama for the judiciary to assume power to vitiate legislation merely because it may feel that the punishment prescribed by the legislative department is too severe for a particular crime.
Appellant's principal argument is that the crime of burglary in the first degree is a much less serious crime than that of murder in the first degree; that the punishment for murder in the first degree is life imprisonment and that the limit on the punishment for burglary in the first degree is also imprisonment for life or the equivalent. The same can be said as to other crimes, including robbery, in which the maximum punishment is imprisonment for life or its equivalent.
Except for the removal of the death penalty, the maximum, as well as the minimum, punishment for burglary in the first degree has been the same since the Legislature prescribed and defined the crime of burglary in the first degree, commonly referred to as "burglary in the nighttime." *Page 548 
Acts 1935, No. 100, p. 159. Whatever merit there may be in the argument made by appellant if and when addressed to the Legislature, it furnishes no support for a determination by the court, in favor of appellant, of his contention as to the unconstitutionality of the punishment prescribed by the Legislature. It should be said also that the punishment imposed upon defendant of ten years imprisonment, the minimum provided by statute, furnishes appellant little standing, if any, to raise any question as to any cruel and unusual punishment to be found in the maximum punishment provided by the statute.
On September 5, 1978, at about 9:00 P.M., the home of Mrs. Coreen Taylor, at 312 South Hopper Street, Montgomery, Alabama, was burglarized. According to her testimony, she was in the house at the time the burglars broke the back door open; she immediately went outside through another door to call for neighbors. She did not see the burglars. Her billfold containing some twenty dollar bills and credit cards were missing.
Mr. Edward Hendrix, a neighbor of the victim, heard the victim screaming, went toward her house to determine what the trouble was, stood at the fork of Hopper and East Washington Streets, and while there saw one, whom he subsequently identified as defendant, and another man walk by him and go up East Washington Street. He testified that they "came out from this woman's [the victim's] house between the church and an old vacant house." He soon thereafter saw them "on the corner of — on Old Wetumpka Road where they [the officers] had stopped them."
After the two men had been stopped and questioned by officers and were identified by Mr. Hendrix as the men he had previously seen, they were taken to police headquarters. There defendant, after he had been fully informed and warned as to his constitutional rights, signed an acknowledgement thereof and a confession that he and another had broken into the house "to get some money." He said: "So we kicked the back door in. Freddy got the billfold off the bed, then Freddy gave me the wallet and I took the money out of the wallet, then I gave the billfold to Freddy. Then we went out the back door."
Error is sought to be predicated upon the admission in evidence of the testimony of Lieutenant Sasser, who stopped the defendant and his companion after the burglary, as to the description that he had received over the police radio that two black males had been seen together in the area of the burglary. Although there was evidence tending to show that Lieutenant Sasser did not actually arrest the two men, but that he merely stopped them for questioning, his action in stopping them, as well as his action in holding them after Mr. Hendrix had appeared, was under attack by defendant as constituting an illegal arrest. On that question, the evidence was admissible as tending to justify his action. The court was not in error in admitting his testimony as to what he heard on the radio.
The witness Hendrix testified that as he was sitting on the porch of another person in the neighborhood talking to "the lady on the porch" and heard the "screaming" of the victim of the burglary, he said, "I'm going in the fork of the road up there and see what's happening." Defendant moved to strike the statement on the ground that it was hearsay, and the motion was overruled. It seems that the statement is in the nature of a "spontaneous exclamation or excited utterance and is an exception to the hearsay evidence rule." Gamble, McElroy'sAlabama Evidence, § 265.01. At any rate, the particular statement was patently innocuous, and no prejudicial error can be predicated upon its admission in evidence.
On the lengthy hearing of a pre-trial motion to suppress "certain items of physical evidence," including the billfold of the victim of the burglary found after the burglary and currency of the victim of the burglary found on defendant, it appears that the trial court, a judge of the circuit different from the judge who actually tried the case, was concerned as to whether the *Page 549 
State had shown a connection between the items and the victim. The judge stated:
 "What concerns me about the evidence, Mr. Gillis, I do not know that you have gotten this money or this purse connected up with this victim. That is what concerns me about that."
Appellant relies upon that statement of the judge and its context in an effort to show that the items should not have been admitted in evidence for the reason that there was not a sufficient connection shown between them and the victim. However on the trial of the case, such connection was shown. The ground asserted for the suppression of the evidence was to the effect that there was an illegal search and seizure of the items of evidence. The court overruled such motion, which action is made the ground for a separate assertion of error by appellant, which will be hereinafter discussed. Whether there was a connection between the items of evidence and the victim of the burglary is germane only to the question of the admissibility of the items on the trial. At the time they were admitted in evidence on the trial, the connection between them and the victim of the burglary had been established by the evidence, and there was no error in their admission in evidence.
We are convinced also that there was no error in overruling the pre-trial motion to suppress the evidence as to the billfold and the money. The billfold was not found on the defendant; the currency was. If he was searched in violation of his right to freedom from unreasonable search and seizure, the money would not have been admissible in evidence, and the motion to suppress, in part at least, should have been granted.
Appellant argues that the search was impermissible for the reason that defendant had not been legally arrested in that there was no probable cause at the time for his arrest. We disagree. In our opinion, the police radio communication that had come to the attention of the officer who first stopped and questioned defendant and his companion fully justified his doing so, and when Mr. Hendrix identified them as the persons he had seen leaving the vicinity of the victim's house, probable cause existed for the arrest.
State's Exhibit No. 1, which consisted of an acknowledgement by defendant of the fact that he had been apprised of his rights, that he understood them and that no promise or threats had been made to induce him to make the statement that constituted his confession, contained in its caption the language, "Burg. G.L. of Occupied Dwelling" as the charge. We think that this portion of the exhibit could have been well deleted by agreement of the parties, but we find no prejudicial error in the admission in evidence of the exhibit. The reference gives no basis for a conclusion that defendant was charged with two separate and distinct criminal offenses. No reasonable inference could be drawn therefrom of any imputation to defendant of the commission of a crime separate and apart from the crime for which he was indicted and tried.
We find no error in the record. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is
AFFIRMED.
All the Judges concur except BOWEN, J., who concurs in the result only. *Page 550