LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant (appellant) guilty of robbery in the first degree on a trial *1042 under an indictment that charged in pertinent part that he “in the course of committing a theft .. . used force against the person of James Griggs, with the intent to overcome his physical resistance or physical power of resistance, while the said Lloyd Andrews was armed with a deadly weapon, a pistol, in violation of 13A-8 — 41 of the Code of Alabama,” which, according to § 13A-r8-41(c) is a Class A felony.
After conviction and prior to sentencing, a proceeding under the Habitual Felony Offenders Act (§ 13A-5-9) was instituted, and on the hearing thereof, it was shown that defendant had been convicted and sentenced for nine previously committed felonies. By the Habitual Felony Offenders Act as amended, it is provided:
“In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such conviction has committed another felony he must be punished as follows:
“(3) On conviction of a Class A felony he must be punished by imprisonment for life without parole.”
Appellant was sentenced to life imprisonment without parole.
The alleged victim was the operator of the Rivera Motel in Elba. According to his testimony, at approximately 11:50 P. M. on July 28, 1980, he was lying in his bedroom' next to the office of the motel and heard a bell that caused him to walk into the office. The witness further testified:
“... And there was a man standing there and I asked him if I could help him and he threw a gun in my face and nodded toward the cash register with his head and also the gun and said, ‘Open it up.’ And, I did so and at that time the man walked around behind the counter with me and I was taking the money out of the register handing it to him and him still holding the gun on me.”
After only a few moments the man left with all the currency in the cash register, which according to Mr. Griggs’ calculations consisted of $624, of which there were one one hundred-dollar bill, one fifty-dollar bill and a large number of twenty-dollar bills.
According to the undisputed evidence in the case almost immediately after the robber left the motel, Mr. Griggs reported the robbery to the Elba police, who were at the scene of the robbery within a few moments. Mr. Griggs gave them the description of the robber as a black male, and Mrs. Griggs gave the police a description of the automobile which she saw leave the nearby premises, which description was broadcast by radio at 12:04 A. M., July 29, as an “early model white over red Thunderbird with one black male.” At 12:30 the Elba police were notified by radio by Enterprise police that they had a suspect in custody. It was the defendant driving an automobile that matched the description. It had been observed by one of the Enterprise officers just as it arrived at the well known Boll Weevil Monument in Enterprise at 12:09. The patrolman who made the observation turned his automobile around and followed the other automobile under the underpass until it had crossed over a double yellow line and then, as it drove near the City Hall of Enterprise, the officer “pulled the blue lights on” and the pursued vehicle soon stopped. Other officers converged at the place the automobile stopped. The driver was asked for his driver’s license, which he presented. During that process, one of the officers focused his flashlight on the inside front of the automobile and at least two officers saw a pistol on the floorboard. The driver was then asked to “exit the vehicle and step to the rear, which he did.” One officer “took the pistol in his custody.” Another officer asked defendant “if he had a permit for the pistol, which he stated he did not.” The defendant was then placed “under arrest for carrying a weapon without a permit.”
In checking the defendant for other weapons, the officers noted “a bulge in his right pocket.” The bulge was found to consist of a large amount of currency, including one one-hundred-dollar bill, one fifty-dollar bill and a large number of twenty-dollar bills that totaled, not exactly but approximately the amount that Mr. Griggs calculated that the robber had stolen from him.
*1043 Soon after defendant was taken into custody at Enterprise, Mr. Griggs was transported by officers to Elba to view the defendant. Mr. Griggs was unable to identify him as the robber. In Mr. Griggs’ testimony, he made it clear that defendant did not have on a jacket while in custody like the jacket the robber had on at the time of the robbery. The next morning, while Mr. Griggs and an officer were traveling near New Brockton on the highway between Elba and Enterprise, they found a jacket on the side of the road, which did resemble, according to Mr. Griggs, the jacket that was on the robber at the time of the robbery.
A daughter of Mr. and Mrs. Griggs testified that on the night of the robbery, and only a few minutes before the robbery, she saw an “old model Thunderbird” parked out by the Rivera Motel. She was shown the next morning the vehicle defendant was driving at the time he was arrested in Enterprise. She testified that she was sure that the vehicle shown her was the same vehicle she saw parked near the motel the night before.
Industrious and diligent appointed counsel for appellant, the same appointed counsel that represented him on the trial, has raised every conceivable point, in our opinion, in his dedicated effort to obtain a reversal of the case. In doing so he adopts practically all of the grounds of his motion for a new trial, which was overruled by the trial court.
Nine of the twenty-three grounds of the motion for a new trial relate to the question of the sufficiency or the weight of the evidence of defendant’s guilt. Although the victim of the robbery was unable to identify defendant as the robber, the circumstantial evidence, as summarized above, made possible by the demonstrated efficiency of the law enforcement authorities of Coffee County, the city of Elba and the city of Enterprise, was extraordinarily strong. No witness testified on behalf of defendant. There is no merit in any of the grounds of the motion for a new trial pertaining to the question of the sufficiency or the weight of the evidence.
Six of the grounds of the motion for a new trial involved contentions to the effect that defendant was deprived of constitutional rights in being arrested and his property seized without probable cause. On the contrary, we are of the opinion that all of the several officers who took part in the detection and apprehension of defendant as the robber acted not only with circumspection, propriety and due regard for defendant’s constitutional rights, but also in such an able and effective manner that they should be commended for their actions, which are worthy of emulation. When one of them saw an automobile that matched the description of the automobile in which the robber left the scene of the crime occupied by only one person who matched the only description they had of the robber, at a time, place and direction from the scene of the robbery that was significantly consistent with the driver’s guilt, it was not only constitutionally permissible but also their duty to stop the automobile. Their observance in plain view of a pistol in the automobile of a person who had no permit to carry a pistol was more than probable cause for believing that he was guilty of illegal possession of the pistol and thoroughly justified his arrest therefor. Thereafter, with the unfolding of additional circumstantial evidence pointing to defendant as the robber, there was justification for his further detention and the charge made against him of robbery in the first degree.
A large part of the evidence was presented out of the presence of the jury in order for the court to determine whether the proposed evidence by the State met the constitutional requirements for a valid search and seizure of property possessed by the defendant. It appears that the State took the position that the money on the person of defendant, the pistol in the automobile of defendant and some tires taken off the automobile were properly seized by the State. It appears that the tires were taken off the automobile in order to match their treads with tire treads in the dirt made by the automobile seen at or near the motel *1044 just before and just after the robbery. The court ruled that evidence developed by the taking of the tires off the automobile and matching their tread with that of the tire tread marks on the dirt was not admissible, but that there was no unconstitutional search and seizure involved in the taking of the pistol from the automobile or in the taking of the money from defendant’s pocket. The trial court manifested a splendid concept of the governing principles by stating:
“Now, if we offer money into evidence or offer a pistol into evidence I would rule that the car was stopped in Enterprise, Alabama, and the officers had a right to rely upon the dispatch in stopping the car and making the arrest under Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, and that incidental to the right to stop they had a right to arrest and had a right to search the person of the defendant and what they found on him or in his immediate presence, money or pistol, would be admissible, and that is about as far as we can go.”
Another ground of defendant’s motion for a new trial was to the effect that the victim did not sufficiently identify the pistol aimed at him at the time of the robbery as the pistol taken from the automobile at Enterprise. Such an identification was not necessary in order for the pistol to be admitted as evidence of the fact that the person driving the automobile in Enterprise was the same person that robbed the alleged victim while armed with a pistol.
During the closing argument of counsel for the State, the following occurred:
“MR. HEAD [counsel for the State]:

“Where was the purple jersey recovered, ladies and gentlemen, that the robber had worn on this occasion? One mile from the railroad tracks in New Brockton, and New Brockton lies between Elba and Enterprise.
“MR. CONERLY: We object to any statement of where any shirt was found.
That is not in evidence.
“THE COURT: Overruled.
“MR. CONERLY: We except.
“MR. HEAD: Those are the bare boned facts in this case. That is all the State is giving you to consider. . . . ”
Appellant urges that as the sweater, shirt or jacket was not introduced in evidence, the argument was improper and the court should have sustained defendant’s objection to it. We disagree. Defendant’s argument did not contain any statement that was not supported by the evidence. There was definite evidence to the effect that the “purple jersey” that the “robber had worn on this occasion” was found near New Brockton as stated by counsel.
Another insistence on reversible error is to the effect that the proceeding for sentencing under the Habitual Felony Offenders Act for which a hearing was scheduled and conducted on November 10, 1980, did not give defendant’s attorney adequate time to prepare for the hearing and the resulting sentence should have been vacated. This is exactly what was done as shown by the transcript as follows:
“THE COURT: We are going to vacate the sentence and set a new sentencing hearing, set it in open court right now where everyone will have knowledge of the date time, place, and we will do that next Monday, December 22, at 3 P.M.”
At the hearing on December 22, 1980, oral and record evidence was presented to show the nine previous convictions of defendant for felonies.
We have endeavored to consider all contentions of appellant and have searched the record for error prejudicial to defendant. In our opinion, there is none to be found and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his *1045 opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.