The Grand Jury of Mobile County returned an indictment for murder against the appellant, Wilbert Conrade Swann, and he entered a plea of not guilty, and was found guilty by a jury of murder as charged in the indictment. The appellant was duly sentenced to imprisonment in the penitentiary of the State of Alabama for a term of life, and he gave notice of appeal to this Court.
The appellant was at all proceedings in the trial court represented by counsel of his own choice, and is represented in this Court by the same counsel by appointment of the trial court. The appellant was given a free transcript. This appeal was submitted to this Court on briefs.
The appellant states four reasons in his brief why the trial court erred to the prejudice of the appellant. First, it is error to allow evidence to be introduced which is the product of a "stop and frisk" search when the only basis for the stop is appellant's resemblance to a composite drawing of the suspect; second, it is error to continue to question a suspect who has invoked his right to counsel until counsel is present. A statement made under these circumstances is inadmissible; third, it is error to introduce a statement when there has been a suppression of a tape which is the best evidence of the statement, and it was requested by appellant, and ordered to be produced by the court; fourth, when there *Page 1255 
is no showing of the voluntary shooting of a pistol, there can be no conviction under Code of Alabama, Title 13A-6-2 (a)(2).
The first error complained of by the appellant in his brief is that state's witness, Officer Mickey Domen, did not have the right to stop and frisk the appellant when Domen found a .22 caliber pistol concealed on the appellant, the appellant was arrested for having a concealed pistol. There was a motion by appellant to suppress. On voir dire examination of Officer Domen, a member of the Mobile Police Department, by appellant's counsel, we quote from the record:
"THE COURT: All right, go ahead.
"VOIR DIRE EXAMINATION
"BY MR. BARNETT:
 "Q Let me ask you this, Officer Domen, you got a piece of paper from your squad or whatever it was with a description on it. Is that a fair statement?
"A Description, yes, sir.
 "Q You went out there — the disturbance you went out to Solomon's about didn't have anything to do with this fellow, did it?
"A No, sir.
"Q You had already handled that when you saw him?
"A Yes, sir.
 "Q In relation to when it happened, about how long after you handled that disturbance was it that you saw this fellow? What period of time elapsed from the time you handled that complaint until the time you saw this fellow?
"A Two or three minutes.
 "Q Two to three minutes. All right, now, he hadn't done anything in your presence, hadn't committed any crime in your presence, had he?
"A None.
"Q You had no warrant for him, did you?
"A No, sir.
 "Q So, the reason and is it a fair statement to say the only reason you went over and approached him is the likeness he bore to the description you were given in your squad before you went out that day?
"A Exactly.
 "MR. BARNETT: That's all I have, Judge. Based on that we move to suppress any evidence that they found from him based on the fact that it was illegally seized because the stop itself was not based on any kind of probable cause and wasn't sufficiently legally correct in order to enable him to stop and frisk this fellow.
"THE COURT: Denied. Go ahead."
There was evidence that Officer Domen had a description of the appellant as a murder suspect. It appeared later the pistol was the property of the appellant, and a bullet taken from the body of the deceased which caused her death was fired from appellant's .22 caliber pistol, and that the arrest was made in the parking lot at Solomon's Saloon. The arresting officer had a description of the murder suspect furnished by the Mobile Police Department.
We hold that Officer Domen, when he stopped the appellant in Solomon's parking lot, had sufficient facts before him to cause Officer Domen to reasonably suspect that appellant had committed a felony, and the appellant being a murder suspect, the officer was justified in searching the appellant for a dangerous weapon, and upon finding a .22 caliber pistol on the appellant, the officer had a right to seize the pistol, and arrest the appellant for having it in his possession. Code ofAlabama, 1975, Sec. 15-5-30 and Sec. 15-5-31; Andrews v. State, Ala.Cr.App., 406 So.2d 1041; Certiorari Denied, Ala.406 So.2d 1045; Johnson v. State, Ala.Cr.App. 406 So.2d 446; Burch v.State, Ala.Cr.App. 375 So.2d 546; Robinson v. State, Ala.Cr.App. 361 So.2d 379; Certiorari Denied, Ala.361 So.2d 383; Mauldin v. State, Ala.Cr.App. 402 So.2d 1106; Jones v.State, Ala.Cr.App. 401 So.2d 322.
The second error complained of by the appellant in his brief is that it is error to *Page 1256 
continue to question a suspect, who has invoked his right to counsel, until counsel is present. The appellant was arrested on a warrant charging him with murder. At the time of his arrest, before any questions were asked him, and in the presence of Police Officers Richardson, Boone, Williams, Webb, and his mother, his Miranda rights were read to him. We quote from the record:
"MR. DEEN: Read it like Detective Boone did.
"THE WITNESS: Best I can.
 "A Number 1, you have the right to remain silent and not make any statements at all. Number 2, anything you say will be used against you in a court of law. Number 3, you have a right to consult an attorney before making any statement and have such attorney present with you while you are making a statement. Number 4, if you do not have enough money to afford an attorney, you have the right to have you one appointed by the court to represent you and consulting him before making any statements and to have him present while you are making a statement.
"Q Is that it?
 "A Number 5, if you request an attorney no questions can be asked you until the attorney is present to represent you. Number 6, at any time during the questioning, you may request that the questioning be stopped and it shall be stopped. Then Sergeant Boone asked him if he understood his rights.
"Q What did he say?
"A He said he did.
 "Q Did he appear to be intoxicated or on drugs at the time the statement was read?
"A No, sir. * * *"
The appellant, while being transported from the place of his arrest to the police headquarters, and when no threats, or promises had been made to him to talk, talked with the arresting officers about the appellant's whereabouts on the day of the homicide, and for a few days thereafter, and about the people he had been with, and about the ownership of a .22 caliber pistol owned by the appellant.
Appellant's mother testified in substance that when the appellant was arrested, and before the officers took him downtown, she stated to the officers that she wanted to call Attorney David Burnett's office so he would know about the arrest of the appellant. That Officer Webb went into the kitchen with her, and she made the call.
At no time after the appellant was read his Miranda rights, and said he understood them, or during the ride downtown, while he was talking with the arresting officers, did he request that his attorney be present, or that no further questions be asked until his attorney was present, or he could have an opportunity to talk with his attorney before answering further questions. The record shows that the questions asked were freely and voluntarily answered by the appellant. That he fully understood his Miranda rights.
When a suspect of a crime is fully informed of his Miranda
rights, and knowingly, intelligently, and voluntarily proceeds to talk with the arresting officers, and fails to assert his right to remain silent, or have present his attorney, he waives the rights to remain silent, or have an attorney present during the conversation with the officers. We hold that the facts in this record show clearly that the appellant knowingly, intelligently, and voluntarily waived his right to have his attorney present during the talk with the officers. Dotson v.State, 288 Ala. 727, 265 So.2d 162; 48 Ala. App. 381,265 So.2d 164; Certiorari Denied, 288 Ala. 742, 265 So.2d 175; CertiorariDenied, 93 S.Ct. 930, 409 U.S. 1117, 34 L.Ed.2d 701; Love v.State, Ala.Cr.App., 372 So.2d 414; Taylor v. State, 282 Ala. 567, 213 So.2d 566; Jackson v. State, Ala.Cr.App.,387 So.2d 316; Williams v. State, Ala.Cr.App., 384 So.2d 1205.
The appellant's third contention in his brief is that the trial court erred to his prejudice when it allowed to be introduced into evidence a statement when there has been a suppression of a tape which is the best evidence of the statement, and it was *Page 1257 
requested by the appellant, and ordered to be produced by the court. With reference to the objection by the appellant on the ground that the tape is the best evidence of the statements that had been taped, we note that the testimony of Officer Richardson, who was present when the conversation between the appellant and the police officers who arrested the appellant was taped, was admissible into evidence after appellant was read his Miranda rights, and knowingly, intelligently, and voluntarily waived them. Upon a proper predicate a tape of a conversation, if available, may also be introduced into evidence. We quote from Elkins v. State, 250 Ala. 672,35 So.2d 693:
 "All that the accused voluntarily wrote or said which is material to the charge, is competent against him because it is his own admission and against his own interest. The witness testifies not as to what the writing contains, but as to what he heard the defendant say. The court was not in error in allowing parol evidence of the statement made by the accused."
McElroy's Alabama Evidence 3rd. Edition, Sec. 200.19; Flemingv. State, 57 Ala. App. 556, 329 So.2d 616; McBryar v. State, Ala.Cr.App., 368 So.2d 568; Certiorari Denied, Ala.,368 So.2d 575; Beckham v. State, Ala.Cr.App., 389 So.2d 573.
We now consider the state's failure to produce the tape of the conversation between the appellant and the officers. A copy
of the tape was given to appellant's counsel by state's counsel a week before the day the trial was set, it was not legible, state's counsel stated that he did not intend to attempt to place the copy in evidence, he did not have the tape. Appellant's counsel only requested the tape of state's counsel when the trial began, Officer Richardson had tried to locate the tape, but was unable to do so. The motion to produce the tape was not made until after the trial had begun. The court stated, as follows:
 "THE COURT: All right, I'm going to overrule all your objections and I will deny your motion to suppress. If the tape exists, I've already granted the motion to give it to you but I can't make them produce what they no longer have.
"MR. BARNETT: Thank you.
 "THE COURT: We will be in recess for about five minutes.
"(Recess.)
"(Resumed. Jury present.)"
The trial court should not be put in error for failure to cause the state to produce a tape recording which would call for a delay in, or interruption of, a trial, in order to determine whether the tape still exists, or can be found. In view of the failure of the appellant to file a timely motion for the production of the tape, and to prove it was in the possession, or control, of state's counsel, the trial court did not abuse its discretion to the prejudice of the appellant. The trial court granted appellant the right to receive and play the tape if state's counsel had it, or could locate it during the trial. Fuller v. State, Ala.Cr.App., 338 So.2d 492; Juzang v.State, Ala.Cr.App., 348 So.2d 516; Oliver v. State, Ala.Cr.App., 399 So.2d 941.
Next we consider appellant's fourth contention that when there is no showing of the voluntary shooting of a pistol, there can be no conviction under Code of Alabama, Title 13A-6-2
(a)(2). State's evidence tended to prove that on Wednesday, April 8, 1981 the deceased was a sixteen-year-old girl who lived in Baldwin County, Alabama; that about 10:30 P.M. the deceased and a boy friend left deceased's home, and went to the Met in Mobile, Mobile County, where they had several drinks; that the deceased refused to dance with her date, and refused to leave with him, but danced with another person; her date gave the deceased her purse out of the trunk of his car and left, and early the next morning heard about her death, and gave the Mobile Police a description of the person he last saw the deceased with; the nude body of the deceased was discovered at about 7:00 A.M. on Demotropolis Road in Mobile County, and the clothing of the deceased was found about 175 feet away from the body; deceased's i.d. card, and other personal effects were found near the body. State's evidence further *Page 1258 
tended to prove that on Thursday, April 9, 1981, the deceased was at Shotgun's, a bar in Mobile County, at about 12:30 A.M.; that she was with two men, one whom looked like the appellant; that at 4:30 A.M. she was still with the two men; that later that afternoon the witness who had seen the deceased at Shotgun's at 12:30 A.M., gave the Mobile Police a description of the two men she was with. State's evidence further tended to prove that on April 11, 1981, shortly after 2:26 A.M., Officer Domen of the Mobile Police Department was leaving the parking lot of Solomon's in Mobile, Alabama when he noticed two men and a woman leaving Solomon's; that one of the men, the appellant, especially fit the description of a composite picture handed to Domen earlier that night by the Police Department of Mobile; that the officer approached the two men, and patted them down, and found a .22 caliber, automatic pistol on the appellant; that the pistol was confiscated, and the appellant arrested for carrying a pistol without a permit; that the appellant asked the officer if anyone had been arrested for shooting the girl on Demotropolis Road. State's evidence further tended to prove that the deceased died from a .22 caliber bullet found in the head of the deceased, and fired from the .22 caliber, automatic pistol, at close range, from about six inches to a foot and a half; that the .22 caliber, automatic pistol was the property of the appellant.
State's witness, Tony Simms, testified, in substance, as follows: That he and the appellant were good friends; that witness Simms now stood charged with the murder of the deceased also; that Simms and the appellant met the deceased for the first time at about 9:00 P.M. on April 8, 1981 in the Met, a bar in Mobile County; that they danced, and had a few drinks; that the deceased was with another man, but he left about 11:00 or 12:00 o'clock; that Simms and the appellant went to the "Met" in Simms' Buick car; that Simms, the deceased, and the appellant went in Simms' car to the Shotgun's where the three stayed about 20 or 30 minutes; that they rode around a while, and the appellant and the deceased had sex. That Simms did not have sex with the deceased because he could not have an erection; that the appellant and the deceased got on the back seat of the car, and the appellant pulled the clothes off the deceased, and was having sex with her, and when she pushed him up the second time, the appellant shot her; Simms stated to the appellant, "Wilbert, you shot her," and he said, "I know it;" that the appellant drug her nude body out of the car, and her clothing was thrown out of the car, and her purse emptied along the road. That the appellant had a gun which was in his back pocket; that Simms attempted to clean the blood off the back seat of the car, but could not remove it all; that it all happened about 6:00 in the morning. State's evidence further tended to prove that a sample of blood taken from the back seat of Simms' car, and a sample taken from the ground where the body was found, and a sample taken from the body of the deceased, were all group A, and that about 40% of the people have that kind of blood.
The appellant testified in his own behalf. His testimony was substantially the same as Simms' testimony, except the appellant testified that Simms shot the deceased, and helped get the body out of the car, and that the appellant did not have the gun in his back pocket, but his gun was left in the glove compartment when he was at the Met. There was a conflict in the testimony as to how the appellant got the gun back. Code of Alabama, 1975.
"Sec. 13A-6-2. Murder.
"(a) A person commits the crime of murder if:
 "(1) With intent to cause the death of another person, he causes the death of that person or of another person; or
 "(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person." *Page 1259 
 "(b) A person does not commit murder under subdivisions (a)(1) or (a)(2) of this section if he was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself. The burden of injecting the issue of killing under legal provocation is on the defendant, but this does not shift the burden of proof. This subsection does not apply to a prosecution for, or preclude a conviction of, manslaughter or other crime."
A positive intent to cause the death of the deceased is an essential element of murder. An intent to cause the death of the deceased may be inferred from the character of the assault, the use of a deadly weapon, and all other attending circumstances surrounding the death of the deceased. We hold that under the facts in this record it was a question for the jury to decide who shot the deceased, and if the shooting was intentional. That state's evidence fully sustains the jury's verdict of guilty as charged in the indictment. Code ofAlabama, 1975, Sec. 13A-6-2-murder, supra; Harjo v. State, Ala.Cr.App., 395 So.2d 1104; Certiorari Denied, Ala.,395 So.2d 1105.
There being no reversible error, the judgment of the trial court is due to be, and is hereby affirmed.
The foregoing opinion was prepared by Honorable JOSEPH J. MULLINS, a retired Circuit Judge, serving as a Judge of this Court; his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur.