Sam Tombrello, Jr. was indicted on March 3, 1981, by the Greene County Grand Jury for the November 6, 1980, first-degree burglary of the residence of Thomas Summerville located in Pleasant Ridge, a small community near Eutaw. After a lengthy trial, appellant was found guilty as charged. The trial court sentenced him to life imprisonment. *Page 1320 
From that conviction he now appeals in forma pauperis.
Appellant raises no issue on appeal challenging the sufficiency of the state's evidence. Thus, only a short narration of the facts is necessary.
Sometime during the first part of 1980, appellant contacted George Gore whom he had met about one and one-half years prior to the date of appellant's trial, in an attempt to solicit his aid in procuring assistance in various robberies and burglaries he was planning. Appellant asked Gore to find some "syndicate" individuals from Chicago who could open safes and deactivate alarm systems. Appellant was expecting Gore to put him in contact with someone in Chicago who could assist him. In late October, 1980, after numerous telephone conversations with appellant, Gore contacted F.B.I. agent Robert Pecoraro in Chicago whom Gore had previously met. Gore informed agent Pecoraro of appellant's requests.
Subsequent thereto, on October 27, 1980, Gore informed agent Pecoraro of an Alabama telephone number at which appellant was expecting Gore to contact him. Agent Pecoraro contacted several other agents and had an informant, Robert Martin, call appellant on October 28, at 2:00 p.m. During this conversation, which appellant thought was from the Chicago "syndicate" contact supplied by Gore, appellant discussed his need for assistance in his planned criminal activities and informed Martin that he would fly to Chicago for further discussions.
On October 29, appellant was met at O'Hare Airport in Chicago by agent Pecoraro who posed as a member of the Mafia. They went to a nearby motel and discussed the burglary of the Summerville residence. The conversation, which lasted about two hours, was recorded. During the meeting appellant made a drawing of the Summerville residence and adjacent store. Before leaving Chicago, appellant gave agent Pecoraro two Birmingham telephone numbers at which he could be contacted. Afterwards appellant returned to Birmingham.
On October 30, telephone calls were made to the Birmingham numbers given agent Pecoraro by appellant and a meeting between appellant, Pecoraro and Martin in Birmingham was planned. The telephone conversations were recorded. On November 5, agent Pecoraro, accompanied by agents John O'Rourke and John Dolan, arrived in Birmingham and met Martin at a local motel. That evening appellant was telephoned and a meeting with him was scheduled for the next day. This conversation was also recorded.
Around 10:00 a.m. the next day appellant and Floyd Watson met agents Pecoraro and Dolan and informant Martin at the motel. A meeting lasting about four hours followed during which appellant drew a rough sketch of the layout of the Summerville house as well as their store where a large safe was located. Around 3:00 p.m. the agents left the motel and met appellant, Watson, and an individual identified by appellant as Jim Wright at a local restaurant. A meeting lasting about forty-five minutes to one hour occurred. Afterwards, the agents, appellant, and his confederates travelled to the Summerville residence and observed the layout of the home and store. It was not completely dark at the time they viewed the Summerville residence.
Subsequent thereto, the agents and appellant went to O'Jim's Restaurant and had dinner. There appellant discussed the manner in which the crime should be committed. About thirty to forty minutes later, they returned to the Summerville residence. A short time later appellant, armed with a .25 caliber Bauer automatic pistol, was arrested in the house by agents who had hidden therein.
There was no motion to exclude the evidence made at the close of the State's case.
 I
Appellant contends that the trial court erred in denying his motion for a continuance due to the unavailability of a witness. Appellant made an offer of proof as to the substance of the testimony expected from *Page 1321 
the witness. The state produced evidence that the witness had little connection with the investigation of the case and took an active role only on the day of the crime. Furthermore, the record reflects that the first witness called by appellant on his behalf was the same one over which appellant had attempted to continue his case.
From this state of the record, it is clear that appellant suffered no prejudice by the trial court's denial of his motion in light of the fact that his witness was present and called by him at trial. Although the witness did not testify as appellant had indicated in his offer of proof, he nonetheless had the opportunity to question him. Based upon the foregoing, we find no error in the trial court's ruling. Jackson v. State,414 So.2d 1014 (Ala.Cr.App. 1982); Godfrey v. State, 383 So.2d 575
(Ala.Cr.App.), cert. denied, 383 So.2d 579 (Ala. 1980); Pottsv. State, (Ms. March 2, 1982), (Ala.Cr.App. 1982).
 II
Appellant asserts that the trial court committed reversible error in failing to order a presentence report on appellant prior to sentencing.
After the jury had returned its verdict the following transpired:
 "THE COURT: Mr. Tombrello, please come around. (Defendant complies) The jury has returned a verdict finding you guilty of burglary in the first degree. Do you have anything to say before I impose sentence of law upon you?
"MR. TOMBRELLO: No, sir. I don't.
 "THE COURT: Do you wish to have a presentence report before I impose sentence of law, or do you wish to waive that and let me go ahead and sentence you today?
"MR. TOMBRELLO: May I consult my attorney?
"THE COURT: Yes, sir.
 (Consultation between attorney and Mr. Tombrello was had, after which the following occurred:)
 "THE COURT: Would you like for me to sentence you today?
"MR. TOMBRELLO: Yes, sir.
 "THE COURT: Do you have anything at all in which to say or that you wish to offer to me before I impose sentence of law upon you?
"MR. TOMBRELLO: No, sir."
(R. 354-355)
Under A.R.Crim.P. 3 (a)(2), on motion of the trial court orwritten motion of either party, the trial court shall have prepared a written report of a presentence investigation of a defendant convicted of a felony and the defendant shall not be sentenced until the report is presented to and considered by the trial court. A.R.Crim.P. 6 (b)(1) allows for the parties to waive, with the consent of the trial court, the sentence hearing at which the presentence report is considered.
In the instant case, no written motion for a presentence report was filed by appellant. Nevertheless, the trial court would have allowed an oral motion to substitute therefor. However, after consulting with his trial counsel, appellant waived the preparation of a presentence report as well as the sentence hearing.
In addition, appellant's argument that the judgment and sentence was not reduced to writing is wholly without merit, as the record contains a written minute entry styled "Judgment of Conviction" in full compliance with A.R.Crim.P. 8.
Thus, appellant's contentions are without merit.
 III
Contrary to appellant's contention the sentence of life imprisonment imposed by the trial court, and which is authorized for the instant offense, Ala. Code §§ 13A-5-6 (a)(1), -7-5 (a)(1) (Supp. 1981), does not constitute cruel and unusual punishment under either Art. I § 15 of the 1901 Alabama Constitution or the eighth amendment to the United States Constitution. As stated in Messelt v. State, 351 So.2d 636, 639
(Ala.Cr.App.), cert. denied, 351 So.2d 639 (Ala. 1977): *Page 1322 
 ". . . Where the punishment prescribed by the Legislature is severe merely by reason of its extent, as distinguished from its nature, there is no collision with the Eighth Amendment."
(Citations omitted).
See also Holley v. State, 397 So.2d 211 (Ala.Cr.App.), cert.denied, 397 So.2d 217 (Ala. 1981); Burch v. State, 375 So.2d 546
(Ala.Cr.App. 1979); Serritt v. State, 401 So.2d 248
(Ala.Cr.App.), cert. denied, 401 So.2d 251 (Ala. 1981).
 IV
Appellant argues that the trial court committed reversible error by commenting upon certain aspects of the case, calling to our attention four instances where such occurred.
 A
The first three instances occurred during appellant's cross-examination of FBI agent John O'Rourke. Appellant's cross-examination focused primarily on refuting the accuracy of transcripts of several recorded telephone conversations between appellant and Martin. After a lengthy inquiry into such, which consisted of several pages in the transcript, the state objected, stating that the jury had previously heard the tapes of the conversations and appellant's questions were quoting portions of one transcript out of context. At that point the trial court overruled the objection stating, "I guess he is entitled to cross-examination." (R. 129).
Appellant continued to cross-examine agent O'Rourke as to the accuracy of the transcripts, reading portions thereof at length. The state, without objecting, noted that the accuracy of the transcripts had previously been established. In fact, appellant had suggested to the court and state that they be admitted. The trial court acknowledged such, stating, ". . . that is why we introduced it into evidence" and directed appellant to ask the witness "detailed questions." (R. 136-137).
Having carefully reviewed the above three instances, we find nothing to suggest that the trial court did anything other than attempt to move the trial expeditiously along. There was no limitation placed upon appellant's cross-examination other than to require it to be directed toward relevant and material matters.
The trial judge is vested with discretion in the conduct of a trial, and appellate courts will not interfere unless there has been an abuse of that discretion. The trial judge has a duty to move the testimony expeditiously along. Shelton v. State,384 So.2d 869 (Ala.Cr.App.), cert. denied, 384 So.2d 871 (Ala. 1980).
As we stated in Ball v. State, 337 So.2d 31, 35
(Ala.Cr.App.), cert. quashed, 337 So.2d 39 (Ala. 1976):
 "The latitude and extent of cross-examination has been held to be subject to some limitation. Both state and federal decisions vest trial judges with the limited discretion to cut off questions on cross-examination which: (1) are repetitious, (2) concern wholly collateral matters, (3) are irrelevant, or (4) are harassing, annoying or humiliating." (Citations omitted.)
See also Ellis v. State, 353 So.2d 48 (Ala.Cr.App.), cert.denied, 353 So.2d 50 (Ala. 1977); Mitchell v. State,57 Ala. App. 601, 329 So.2d 658, cert. denied, 295 Ala. 412,329 So.2d 663 (1976); Burke v. State, 44 Ala. App. 379,209 So.2d 859 (1968).
Based upon the foregoing, we find no error in the trial court's actions.
 B
Appellant's last insistence of error concerns the trial court's comment after it had sustained an objection made by the state. The trial court stated "Improper" after making its ruling.
 "The law does not prohibit the trial judge from giving trial counsel his reasons in making certain rulings as to the law applicable to the case. This falls far short of a comment on the evidence.
 "In 23 C.J.S. Criminal Law § 993, p. 1024, it is said, `Generally, it is not improper comment on the evidence for the judge to *Page 1323 
explain his ruling on a matter of law, and he may refer to testimony and state its legal effect, in deciding a point raised during the trial.' (Citations omitted). McDonald v. State, 340 So.2d 80, 83
(Ala.Cr.App.) cert. denied, 340 So.2d 84 (Ala. 1976).
Furthermore, casual remarks by the trial judge concerning testimony which are directed to counsel rather than the jury do not constitute prejudicial comments on the evidence. Carpenterv. State, 400 So.2d 417 (Ala.Cr.App.), cert. denied,400 So.2d 427 (Ala. 1981).
Consequently, we find no merit to appellant's contention.
 V
Lastly, appellant contends that he was denied effective assistance of counsel. However, appellant argued in brief not that specific acts or omissions of his trial counsel rendered his representation inadequate, but that certain acts or omissions of the trial court frustrated such.
Initially, we have carefully reviewed the record and find that the proceedings therein were not reduced to a farce, sham, or mockery of justice. Further, there was no denial of "reasonably effective" assistance of counsel as that standard is utilized by the United States Court of Appeals for the Fifth Circuit. Sheehan v. State, 411 So.2d 824 (Ala.Cr.App. 1981);McKinnis v. State, 392 So.2d 1266 (Ala.Cr.App. 1980), cert.denied, 392 So.2d 1270 (Ala. 1981). We specifically find no lack of diligence on the part of trial counsel in preparing for trial.
As to appellant's contention that the trial court's actions rendered his trial counsel's representation inadequate, he directs our attention to four instances where such occurred. One instance has previously been discussed in part I of this opinion.
As to the trial court's failure to rule on several motions filed by appellant, our search of the record reveals that in addition thereto, appellant made no request for a ruling or an objection to the trial court's failure to rule. Thus, nothing is preserved for our review. Parker v. State, 406 So.2d 1036
(Ala.Cr.App.), cert. denied, 406 So.2d 1041 (Ala. 1981); Boykinv. State, 398 So.2d 766 (Ala.Cr.App), cert. denied,398 So.2d 771 (Ala. 1981); Stewart v. State, 398 So.2d 369 (Ala.Cr.App.),cert. denied, 398 So.2d 376 (Ala. 1981); and cases cited therein.
Appellant asserts that the trial court failed to give him ample time to procure several witnesses he had subpoenaed.
Appellant was arrested on November 6, 1980. On March 16, 1981, appellant was appointed counsel. On May 4, 1981, he was arraigned apparently after having been transferred from the federal penitentiary in Talladega, Alabama, to the Greene County jail. On May 18, 1981, appellant's trial began.
In the record, the trial court noted that there was no record of subpoenas being issued for two of the witnesses. In fact, the record is silent as to whether any of the witnesses were subpoened. In addition, there is no evidence in the record of appellant requesting the trial court to issue attachments on the witnesses. Appellant did not file a motion for a new trial raising the above contention and made no showing as to the expected testimony of the witnesses or whether he could locate the witnesses and have them served within a reasonable time.
Over six months elapsed from the date of appellant's arrest and his trial. From the date of his appointment of trial counsel and the date of trial, a little over two months had passed.
Apparently, appellant is arguing that by not granting him a continuance, the trial court severely impaired his ability to prepare his defense. Thus, he seeks to place the blame for such on his trial counsel. Such an assertion is wholly without merit. Appellant's motion for a continuance, previously discussed in part I of this opinion, contained no ground in support thereof other than that the absence of one witness which was not included in those appellant now claims were vital to his defense. The record indicates that the trial court *Page 1324 
specifically requested from trial counsel any other grounds to support his motion. None were offered.
A careful review of the record leads us to the conclusion that the trial court made no ruling that prevented appellant's trial counsel from preparing and presenting an adequate and effective defense. Morrison v. State, 398 So.2d 730
(Ala.Cr.App. 1979), rev'd on other grounds, 398 So.2d 751 (Ala. 1981); Smith v. State, 368 So.2d 298 (Ala.Cr.App. 1978), cert.denied, 368 So.2d 305 (Ala. 1979).
Furthermore, the record in this case does not support the appellant's contentions concerning the caliber of representation by his trial counsel. We specifically find that counsel rendered effective representation within the meaning of due process at trial.
We have reviewed appellant's contentions on this appeal and find no error. This cause is hereby affirmed.
AFFIRMED.
All the Judges concur.