387 So.2d 917 (1980)
Ex parte Dona Harvey SLY.
(In re: Dona Harvey Sly v. State of Alabama).
79-734.
Supreme Court of Alabama.
September 12, 1980.
*918 Myron K. Allenstein, Gadsden, for petitioners.
No brief for State.
PER CURIAM.
WRIT DENIED.
TORBERT, C. J., MADDOX, ALMON, SHORES and BEATTY, JJ., concur.
FAULKNER, JONES, and EMBRY, JJ., dissent.
BLOODWORTH, J., not sitting.
JONES, Justice (dissenting):
I respectfully dissent. While I grimace at the thought of retarding police procedures beyond those restrictions constitutionally imposed or within the bounds of reasonableness, I cannot concede to the majority's "carte blanche" treatment of the actions practiced by the law enforcement officer in the instant case.
To characterize an unexplained infringement upon one's personal privacy and right to move from one place to another as within the realm of acceptable propriety is to further erode the fundamental freedom concomitant with a true democracy. In failing to require from an officer a logical explanation for a "stop" as a quid pro quo for the right to make such a stop, the majority implicitly sanctions what may often be prolonged, unexplained detention as incident to such action.
A police officer who accosts an individual and restrains his freedom to walk away has "seized" that person. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A stop, as occurred in this instance, albeit of an individual's automobile, is nevertheless a "seizure" within the meaning of Terry. See also U. S. v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).
In Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), a policeman stopped an automobile to check the operator's driver's license and the car's registration. The patrolman was not acting pursuant to any standards, guidelines or procedures pertinent to document spot checks. Additionally, the officer testified that prior to such stop he had observed neither traffic or equipment violations nor any suspicious activity, and that his sole reason for stopping the car was for a spot check of the license and registration certificate.
In excluding evidence seized pursuant to such stop, Mr. Justice White, speaking for a majority of the Court, in Prouse, said:
". . . The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of `reasonableness' upon the exercise of discretion by government officials, including law-enforcement agents, in order ` "to safeguard the privacy and security of individuals against arbitrary invasions. . . ."' Marshall v. Barlow's, Inc., 436 U.S. 307, 312, 98 S.Ct. 1816, 1820 (1978), quoting Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967)."
A person operating an automobile does not lose the reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. *919 While the facts before us are not exactly aligned with those of Prouse, their similarity is such that one need not strain to find the probability of a grave danger of abuse of discretion. See U. S. v. Martinez-Fuerte, supra, 428 U.S. at 559, 96 S.Ct. at 3083. Likewise, the issue is different. Here, it is not the right to stop the vehicle that is challenged, only the right to demand that the operator display his driver's license absent an explanation by the officer of the reason for the stop. But, implicit in Prouse, the right of an operator of a stopped car is not to display his license upon demand of a law enforcement officer if such display is the only reason for the stop.
The fact that the officer later makes known, or can prove, an articulable ground for identifying the operator as a violator is an insufficient basis for permitting the officer to withhold such fact from the driver until after he complies with the officer's demand to display his driver's license. This rationale allows the officer to violate the spirit of Prouse with impunity. Furthermore, the imposition of a requirement that the officer, when requested to do so, inform the stopped motorist of the purpose for the intrusion is no undue burden on the officer in the exercise of his duties. Thus, I would hold that, as a matter of law, Sly did not disobey a lawful order when he drove away from the officer without displaying his driver's license.
FAULKNER and EMBRY, JJ., concur.