The appellants, Earl Maxwell and Denise Avellina, were each indicted in a two-count indictment charging possession of marijuana for other than personal use, in violation of §13A-12-213(a)(1), Code of Alabama 1975, and possession of marijuana for personal use after having been convicted of unlawful possession of marijuana, in violation of §13A-12-213(a)(2), Code of Alabama 1975. They filed motions to suppress the evidence seized, on the grounds that the search and seizure were illegal and violated their state and federal constitutional rights. Following a hearing, the trial court denied their motion to suppress and their motions to dismiss the indictments. Thereafter, they pleaded guilty to an amended charge of possession of marijuana for personal use only; the charges of possession of marijuana for other than personal use were nol-prossed. The appellants reserved the right to appeal from the trial court's denial of their motions to suppress. They were each sentenced to serve one year in the Baldwin County Jail; these sentences were suspended and they were placed on two years of unsupervised probation and were ordered to pay fines and costs.
The appellants argue that the trial court erred in denying their motion to suppress the evidence, because, they say, the search and seizure was warrantless and unlawful. The state argues that the appellants lack standing to challenge the search of the boat, initially, and, further, lack standing to challenge the search of the red bag in which the first of the marijuana was discovered. In the alternative, the state argues that the unlawful substances were properly seized pursuant to the "plain view" exception to the exclusionary rule.
At the hearing on the appellant's motion to suppress, the state presented the testimony of Steve Coker, a marine patrol officer with the Alabama Marine Police, who was a conservation enforcement officer. Coker was the sole witness to testify during the hearing. Coker testified that, on the evening in question, he was working with United States Customs personnel on patrol in the waters off Orange Beach, Alabama. Four other officials were present with Coker, including a coast guardsman. Coker testified that, at approximately 5:00 p.m., he observed a sailing vessel — "Boots" — that had run aground, with several people on its deck. The sailboat had a large cabin area below. He further testified that appellant Earl Maxwell was attempting to pull the sailboat off the shore from a dinghy which was alongside the sailboat. Coker testified that he asked the group whether they needed assistance and that Maxwell answered that they did not. The refusal aroused his suspicion, so Coker announced his intent to board the sailboat. He testified that he intended to check the boat's registration documentation. Coker and the coast guardsman boarded the sailboat, and Maxwell left the dinghy and returned to the cockpit area of the sailboat. Coker testified that Maxwell identified himself as the owner of the sailboat. Coker asked to see the sailboat's documentation; Maxwell went below deck to retrieve the documents and was followed by Coker. Coker testified that the sailboat was registered out of Louisiana. He asked Maxwell for the location of the boat's main beam number, in order to insure that it coincided with the number on the documentation or registration papers. A vessel's main beam number is the ship's identification number. The number was permanently affixed to the vessel in the forward berthing area and, while checking the number, Coker testified that he noticed a strong, foul odor, which smelled like something rotting. He determined that it was coming from a plastic "Tupperware" container, which was situated on top of an open red canvas bag in the area in which he was standing. He stated that the container was approximately three inches in diameter and was opaque. Coker testified that the strong, rotting smell gave him reason to believe that there might be a violation of conservation laws, specifically, that the container might have something like chunks of alligator meat or chunks of turtle meat inside. Coker opened the container and found dried mushrooms with the edges shaved off of them. He stated that he believed that the mushrooms were psilocybin mushrooms, *Page 438 
which are a controlled substance. He therefore believed, he said, that he had probable cause to look further into the canvas bag, where he found a small bag of marijuana and other pharmaceutical equipment. He further testified that he found clothing in the duffel bag, but no forms of identification. Coker took the mushrooms and marijuana back to the Alabama Marine Police boat, where he was informed that information had been received that the sailboat was a suspect vessel for narcotics smuggling. Coker reboarded the sailboat and told appellant Maxwell that they were going to search the boat and that if narcotics were found during the search the boat was subject to seizure. Appellant Avellina then stood up and stated that there were more drugs on the boat, but that they belonged to her and that appellant Maxwell did not know about them. Appellant Avellina then retrieved a metal cookie container which she indicated contained marijuana.
The record indicates that, just prior to the hearing, defense counsel asked the prosecutor to stipulate to the ownership of the boat being by both parties, to the search having been warrantless, and to the results of the forensic reports concerning the seized materials. The prosecutor agreed to stipulate to the fact that there was no warrant and to the results of the forensic report. However, he stated, "[a]s to ownership of the vessel, I always assumed he [Maxwell] was the owner of the vessel." He then asked if both Maxwell and Avellina, who were married, were owners; defense counsel responded that they were and that, although Maxwell was the registered owner, Louisiana was a community property state and therefore Avellina was also an owner. The prosecutor responded that the state could not stipulate to that. The appellants had previously filed a motion for an evidentiary hearing or, in the alternative, to dismiss; that motion requested a list, which was allegedly mentioned by Steve Coker and which shows what evidence was found and in whose personal luggage it was found. The appellants submitted in the motion that the list would provide exculpatory evidence, because, they said, it "would absolutely prove that the evidence seized in this case was not found in this defendant's [presumably these defendants'] possession but rather in the personal luggage of other co-defendants." The appellants submitted that because the list had apparently been lost, misplaced, or destroyed, they were entitled to an evidentiary hearing or a dismissal of the charges against them.
In order to raise on appeal the issue of standing, the state must raise that issue at trial; otherwise, it has been waived.Cook v. State, 574 So.2d 905 (Ala.Cr.App. 1990), citing UnitedStates v. Garcia, 882 F.2d 699, 701-02 (2d Cir.), cert. denied,493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); UnitedStates v. Sanchez, 689 F.2d 508, 509 n. 1 (5th Cir. 1982). In the present case, the state clearly raised the issue of standing and attempted to argue that, if no one claimed a possessory interest in the red canvas bag, then no one could challenge the search and seizure. However, defense counsel clearly proved that Maxwell had an ownership interest in the sailboat. Following the state's evidence when the issue of standing was discussed, the trial court stated:
 "The standing problem. Obviously one does not have standing to complain about the search of any particular area unless they can show ownership or some protected interest therein. Otherwise, they have no standing to complain about the search. In this event, Mr. Maxwell has been shown to be the documented — the boat is documented in his name. He was the captain. So far as — I think the State's evidence clearly establishes that Mr. Maxwell was on his own boat which was documented to him — may have standing. But I don't know that that would apply to Ms. Avellina. At this point there's no evidence that they are — that she has any interest in the boat whatsoever."
The fact that appellant Maxwell did not claim a possessory interest in the red canvas bag does not diminish his standing to challenge the search and seizure as illegal.
 "Establishing such an interest in the premises searched itself suffices to establish standing, and thus the defendant need not show an interest in the particular items which are seized by the police. *Page 439 
As the Supreme Court explained in Alderman v. United States [394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)]:
 " 'If the police make an unwarranted search of a house and seize tangible property belonging to third parties * * * the home owner may object to its use against him, not because he had any interest in the seized items as "effects" protected by the Fourth Amendment, but because they were the fruits of an unauthorized search of his house, which is itself expressly protected by the Fourth Amendment.' "
LaFave, Search and Seizure (2d ed. 1987), § 11.3(a) (citations omitted). See also United States v. Perez, 700 F.2d 1232 (8th Cir. 1983).
However, standing was not proved as to Avellina. Although the defendants presented evidence that they were married, no evidence was admitted to show that appellant Avellina regularly resided on the sailboat.
 "Family members regularly residing upon the premises, though not parties to the legal arrangements concerning who has the possessory interest in those premises, also have standing of essentially the same dimensions. In Bumper v. North Carolina, [391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)], for example, the Supreme Court summarily concluded that there could 'be no question of the petitioner's standing' to challenge a search of his grandmother's home during his absence in light of the fact that he regularly resided there as well. Unquestionably, a spouse of the person with the possessory interest also has standing as to the premises if that spouse also resides there, as do offspring who likewise make those premises their home. In this connection, it cannot be said that 'one is protected by the Fourth Amendment at only his principal home,' and thus it is possible for a person to have this family member type of standing by residing regularly but yet not continuously upon the premises."
LaFave, ibid. (Footnotes omitted.)
In quoting LaFave, we note that the depositions contained in the record indicate that the sailboat was used more as a houseboat than as a means of transportation, such as a vehicle. If the facts had indicated that the situation was otherwise, our decision as to Avellina's standing, as a spouse, might have been different. See LaFave, Search and Seizure (2d ed. 1987), § 11.3(e) at 336. In the present case, Avellina has no standing to raise the present issue.
The defense did sufficiently prove that Maxwell has standing to raise the issue of illegal search and seizure; nevertheless, because the contraband was discovered in plain view, the seizure was proper pursuant to an exception to the exclusionary rule relating to warrantless searches. The "plain view" exception is properly applied to the seizure of an item where an officer's access to it has some prior justification under the Fourth Amendment. Texas v. Brown, 460 U.S. 730, 738,103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983). Because in the present case Coker was lawfully engaged in checking the sailboat's registration when he perceived the suspicious object, he was properly authorized to seize it immediately. Texas v. Brown,460 U.S. at 739, 103 S.Ct. at 1541. As an officer of the Alabama Marine Police, Coker was authorized, pursuant to §33-5-5, Code of Alabama 1975, to exercise all "the power of peace officers in this state and [to] exercise such powers anywhere within the state." Moreover, pursuant to § 33-5-9
"[e]very vessel on the waters of this state shall be registered and numbered." The certification of registration on a vessel registered in Alabama "shall be available at all times for inspection on the vessel for which issued whenever such vessel is in operation." § 33-5-11. Thus, Coker was authorized to check the vessel's registration. Furthermore, the coast guardsman was also authorized to stop and board the vessel, as well as to make inquiries, examinations, inspections, and searches and seizures for the prevention and detection of any violations of United States laws. 14 U.S.C. § 89(a) (1976). See also 46 U.S.C. § 12103(e), 2101(34) (1976).
 " 'Under this statute [14 U.S.C. § 89(a) (1976)], the Coast Guard may stop and *Page 440 
board any American flag vessel on the high seas without a warrant and without any particularized suspicion of wrongdoing. Although the statutory language is quite broad, the statute has been consistently construed as limiting such stops — in the absence of probable cause — to the necessary task of conducting safety and document inspections. . . .
" '. . . .
 " 'We believe the limited intrusion represented by a document and safety inspection on the high seas, even in the absence of a warrant or suspicion of wrongdoing, is reasonable under the Fourth Amendment.' "
United States v. Pringle, 751 F.2d 419, 424 (1st Cir. 1984), quoting United States v. Hilton, 619 F.2d 127 (1st Cir. 1980), cert. denied, 449 U.S. 887, 101 S.Ct. 243, 66 L.Ed.2d 113
(1980). See also United States v. Robbins, 623 F.2d 418 (5th Cir. 1980). Even if the true reason for the stop and search was a narcotics "sting" operation, as indicated by one of the customs officers in her deposition, the officers acted properly and within their authority. United States v.Villamonte-Marquez, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22
(1983) (the stopping and boarding of a sailboat, which had access to the open sea, by customs officers without any suspicion of wrongdoing did not violate the Fourth Amendment).
Thereafter, Coker properly investigated the plastic container to determine the cause of the rotting smell, under the reasonable belief that a regulation of the Department of Conservation and Natural Resources, protecting certain wildlife, during certain times and in certain places, had been violated. Therefore, we find no error in the trial court's denial of the appellants' motion to suppress.
AFFIRMED.
All Judges concur except TAYLOR, J., who concurs in result only, without opinion.