The appellant was convicted of possession of marijuana in the second degree, in violation of § 13A-12-214, Code of Alabama
1975, and the unlawful possession of *Page 137 
a controlled substance, specifically psilocybin, in violation of § 13A-12-212, Code of Alabama 1975.
 I
The appellant argues that the trial court erred in denying his motion to suppress because the warrantless search of his house and the seizure of the narcotics as a result of the search were allegedly illegal. The record indicates that, after a telephone conversation with the appellant, the appellant's parents contacted emergency medical personnel and requested that they go to the appellant's residence, because he appeared to be under the influence of narcotics and during the conversation had been threatening suicide or stating that he was going to die. The appellant, completely unclothed, was found by the emergency medical technicians behind a chair. An emergency medical technician testified that, after being contacted concerning the appellant, he contacted the Huntsville Police Department and the sheriff's department. One of the technicians testified that the appellant "had a wild look about him" and that "his eyes were wired." He testified that the appellant "wouldn't answer no questions at all" and that he "just looked at us." An employee of the ambulance service that responded to the call testified that the appellant answered his questions in a delayed manner, but that he gave appropriate answers. The witness testified that the appellant dressed himself and walked to the ambulance. The witness testified that, upon entering the house, he noticed several plants "spread all over the room." He testified that members of the sheriff's department, who were already on the scene, and the emergency medical technicians were unsure of the type of plants and attempted to identify them. He further testified that he believed that the appellant was asked to identify questions concerning the nature of the plants. He testified that the appellant's condition improved during the time he was at his house. He stated that he was present when the appellant signed a consent to search form and that, in his opinion, the appellant understood what was going on when he signed the form. On cross-examination, the witness testified that the appellant stated that he wanted to cooperate when he signed the form.
A police officer who was present during the appellant's arrest testified that the Huntsville Police Department was contacted by the Huntsville emergency medical technicians, who had requested that the police respond quickly to the call, because of the nature of the situation. The officer testified that, upon entering the house, he noticed several plants that had what "looked like fungus and other stuff growing off of them." He testified that another officer stated that he believed the plants were a type of mushroom "that you get high off of" and that they therefore notified their supervisor, who in turn notified the vice and narcotics division of the police department.
A sergeant in the vice and narcotics division testified that he arrived at the scene when the appellant was being put into the ambulance. He testified that he was briefed by a paramedic and a uniformed supervisor on the scene concerning the plants, which appeared to be mushrooms. He testified that he asked if the appellant had signed a consent form, and being told that he had not, the sergeant instructed the officers "not to do any searching until I talk to the defendant." The sergeant testified that he spoke to the appellant and attempted to ascertain whether the appellant could understand the situation. He testified that the appellant "seemed fine; a little wild in appearance; a little slow in his statement; but other than that, fine." He stated that he read the appellant his rights, pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), very slowly and clearly, asking him if he understood them. The sergeant testified that the appellant responded that he did and that he was aware of them. He stated that the appellant further said, " 'Look, I want to do anything to cooperate.' " The appellant then signed the consent form.
The State argues that the search and seizure of the evidence were lawful because the appellant consented to the search *Page 138 
and because the narcotics were seized pursuant to the plain view exception to the exclusionary rule. The appellant argues that his consent was involuntary, because, he says, he lacked the capacity to consent to the search due to the fact that he was under the influence of psilocyn. He further argues that his condition was obvious and that the authorities must have known of his lack of capacity.
In Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515,93 L.Ed.2d 473 (1986), the United States Supreme Court held that coercive police activity is a necessary prerequisite to finding that a confession is involuntary within the meaning of the due process clause. "Absent police conduct causally related to the confession, there is simply no basis for concluding that any State actor has deprived a criminal defendant of due process of law." 479 U.S. at 164, 107 S.Ct. at 520. In so holding, the Court stated:
 "We have also observed that '[j]urists and scholars uniformly have recognized that the exclusionary rule imposes a substantial cost on the societal interest in law enforcement by its proscription of what concededly is relevant evidence.' United States v. Janis, 428 U.S. 433, 448-449 [96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046] (1976). See also United States v. Havens, 446 U.S. 620, 627, 100 S.Ct. 1912, 1916-17, 64 L.Ed.2d 559
(1980); United States v. Calandra, 414 U.S. 338
[94 S.Ct. 613, 38 L.Ed.2d 561] (1974). Moreover, suppressing respondent's statements would serve absolutely no purpose in enforcing constitutional guarantees. The purpose of excluding evidence seized in violation of the Constitution is to substantially deter future violations of the Constitution. See United States v. Leon, 468 U.S. 897, 906-913 [104 S.Ct. 3405, 3411-15, 82 L.Ed.2d 677] (1984). Only if we were to establish a brand new constitutional right — the right of a criminal defendant to confess to his crime only when totally rational and properly motivated — could respondent's present claim be sustained.
 ". . . '[T]he central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence,' Delaware v. VanArsdall, 475 U.S. 673, 681 [106 S.Ct. 1431, 1436, 89 L.Ed.2d 674] (1986), and while we have previously held that exclusion of evidence may be necessary to protect constitutional guarantees, both the necessity for the collateral inquiry and the exclusion of evidence deflect a criminal trial from its basic purpose. Respondent would now have us require sweeping inquiries into the state of mind of a criminal defendant who has confessed, inquiries quite divorced from any coercion brought to bear on the defendant by the State. We think the Constitution rightly leaves this sort of inquiry to be resolved by State laws governing the admission of evidence and erects no standard of its own in this area. . . . 'The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence, whether true or false.' Lisenba v. California, 314 U.S. 219, 236
[62 S.Ct. 280, 290, 86 L.Ed. 166] (1941)."
Colorado v. Connelly, 479 U.S. at 166-67, 107 S.Ct. at 521.
Given the rules of evidence, we do not believe that the evidence concerning the appellee's intoxication at the time of his consent was sufficient to prove that his consent was involuntary.
 " ' "[U]nless intoxication, in and of itself, so impairs the defendant's mind that he is 'unconscious of the meaning of his words,' the fact that the defendant was intoxicated at the time he confessed is simply one factor to be considered when reviewing the totality of the circumstances surrounding the confession." Carr v. State, 545 So.2d 820, 824 (Ala.Cr.App. 1989). "The intoxicated condition of an accused when he makes a confession, unless it goes to the extent of mania, does not affect the admissibility and evidence of the confession, but may affect its weight and credibility." Callahan v. State, 557 So.2d 1292, 1300 (Ala.Cr.App.), affirmed, 557 So.2d 1311 (Ala. 1989).' *Page 139 
 "White v. State, [Ms. 8 Div. 473, August 24, 1990] [587 So.2d 1218] (Ala.Cr.App. 1990)."
State v. Austin, 596 So.2d 598 (Ala.Cr.App. 1991).
In the present case, there was ample testimony that, although the appellant's responses were slow, they were appropriate; thus the appellant appeared to understand the meaning of his words. Moreover, the appellant stated that he was aware of his rights pursuant to Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that he understood them. Therefore, the search and seizure were legal, based on the appellant's consent to search, and the admission of the evidence seized as a result of that search was therefore proper. Moreover, Alabama cases have held that where the evidence pertaining to the voluntariness of a consent is conflicting, the trial court is in the best position to determine whether there was a lawful, voluntary consent.Daniels v. State, 534 So.2d 628, 654 (Ala.Cr.App. 1985), affirmed, 534 So.2d 664 (Ala. 1989), cert. denied,479 U.S. 1040, 107 S.Ct. 898, 93 L.Ed.2d 850 (1987). A trial court's finding will not be disturbed on appeal unless it is found to be palpably contrary to the weight of the evidence. Id.
Furthermore, the evidence was properly admitted pursuant to the plain view exception to the exclusionary rule for warrantless searches and seizures. The police were present in the appellant's house, because they were contacted by the emergency medical technicians, and were requested to be present due to the nature of the situation. The medical technicians had been called by the appellant's parents and had been informed that the appellant seemed to be under the influence of narcotics and was threatening violence to himself. Although the appellant's parents requested that the medical personnel not contact the police or law enforcement agencies, the medical personnel clearly acted properly and lawfully in contacting the police in a situation where possible violence was involved. There is no evidence that the police conducted a subterfuge entry. See LaFave, Search and Seizure, § 6.7(d) (2d ed. 1987). Moreover, there was ample testimony that the narcotics were situated in the open throughout the appellant's house and were easily observable upon entry into the appellant's house.
Although the appellant argues that the mushrooms should not have been seized because the officers who originally observed the plants were unaware of their identity, there was testimony that one of the officers believed the plants to be hallucinogenic mushrooms. Moreover, there was a clear "nexus" between the seized evidence and criminal behavior. Warden v.Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Thus, the evidence was also properly admitted pursuant to the plain view exception to the exclusionary rule. Beggs v. State,568 So.2d 377 (Ala.Cr.App. 1990); Maxwell v. State,587 So.2d 436, (Ala.Cr.App.), cert. denied, 587 So.2d 440 (Ala. 1991).
 II
The appellant argues that the trial court erred in denying his motion to dismiss the indictment and his amended motion to dismiss the indictment. Initially, the appellant argues that the indictment was based upon unconstitutional statutes concerning the unlawful possession of marijuana and controlled substances which violate the First Amendment of the United States Constitution. The appellant argues that the statute violates his right to the free exercise of religion, which in the appellant's case included the worship of plant's as gods and the religious practice of using the marijuana and psilocybin. He further argues that the indictment violates Art. 1, § 3 of the Alabama Constitution of 1901, for the same reason. However, the United States Supreme Court has disposed of this argument in an analogous situation, where a petitioner argued that, as a Mormon, he had the right to transport a woman across state lines for the purpose of making her his plural wife. The Court held:
 "It is also urged that the requisite criminal intent was lacking since petitioners were motivated by a religious belief. *Page 140 
That defense claims too much. If upheld, it would place beyond the law any act done under claim of religious sanction. But it has long been held that the fact that polygamy is supported by a religious creed offers no defense in a prosecution for bigamy. Reynolds v. United States, [98 U.S. 145, 25 L.Ed. 244 (1878)]. Whether an act is immoral within the meaning of the statute is not to be determined by the accused's concepts of morality. Congress has provided the standard. The offense is complete if the accused intended to perform, and did in fact perform, the act which the statute condemns, viz., the transportation of a woman for the purpose of making her his plural wife or co-habituating with her as such."
Cleveland v. United States, 329 U.S. 14, 20, 67 S.Ct. 13, 16,91 L.Ed. 12 (1946).
When the statutes pertinent to this case, § 13A-12-212, §13A-12-213, § 13A-12-214, Code of Alabama 1975, were passed by the legislature, the unlawful possession of marijuana and of controlled substances were legally designated as offenses. In the present case, the offenses of unlawful possession of marijuana and of controlled substances were completed when the appellant intended to possess, and did possess, the controlled substance and the marijuana, in violation of these statutes.
The appellant further argues that the indictment was unconstitutional, because it violated his Fourth Amendment right against unlawful search and seizure. However, this argument is without merit, because we have previously held that the search of the appellant's house and the seizure of this evidence was legal. See part I. Moreover, the exclusionary rule excluding evidence seized in a warrantless search does not apply to grand juries. United States v. Calandra, 414 U.S. 338,94 S.Ct 613, 38 L.Ed.2d 561 (1974).
The appellant also argues, without citing any authority, that his indictment violated the Fifth Amendment of the United States Constitution because witnesses, who were unknown to him, were allowed to testify before the grand jury with neither his attorney nor himself being present. He argues that he was therefore deprived of life, liberty, and property without being provided due process of law.
 "Grand jury secrecy provisions commonly provide that no person other than grand jurors may be present during deliberations and voting, while only the jurors, prosecutors, supporting personnel (e.g., stenographers) and the witness under examination may be present during any other portion of the proceedings."
LaFave and Israel, 2 Criminal Procedure § 15.6 (1984).
 "In almost all jurisdictions, the prospective defendant who knows that his case will come before the grand jury can at least communicate with the grand jury by letter, setting forth any relevant information in an objective fashion. If the prospective defendant also asks to testify, most jurisdictions allow the grand jury to grant or deny that request at its discretion. In the federal system, Justice Department Guidelines direct U.S. Attorneys to give 'favorable consideration' to such requests 'under normal circumstances,' but those guidelines do not create a legally enforceable right to appear. Several states, however, do give the prospective defendant a right to appear."
Id. at § 15.2(b).
A defendant in Alabama has no right to be present before the grand jury.
The appellant further argues that his indictment violated theSixth Amendment of the United States Constitution, because the trial judge, by reading his indictment to the jury prior to the commencement of trial, gave the jury the impression that he was already guilty of the charges against him. However, an indictment is issued in order to ensure that an accused is aware of the nature of the charges against him and to protect him from future jeopardy. The reading of an indictment before a jury at the commencement of trial merely provides a starting point or framework from which a juror can interpret the evidence. The trial court, as in the instant *Page 141 
case, informs the jury that the indictment is not to be considered as evidence against the appellant and, therefore, the appellant suffered no prejudice. The appellant citedDuncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444,20 L.Ed.2d 491 (1968), in support of his claim; however, that case addresses pretrial publicity.
 III
The appellant argues that the trial court erred in sustaining the State's objection to the testimony of a defense witness concerning the appellant's condition when he signed the consent to search. The record indicates that a registered nurse, who had treated the appellant at a Huntsville hospital following the offense, was asked, "In your opinion as a registered nurse, was Mr. Rheuark in a condition to sign an informed consent?" The prosecutor objected to the question, and the trial court sustained the objection on the grounds that the question called for "a legal conclusion."
"A witness, be he expert or lay, cannot give his opinion when such constitutes a legal conclusion or the application of a legal definition." C. Gamble, McElroy's Alabama Evidence § 128.07 (4th ed. 1991), citing Ex parte Dial, 387 So.2d 879
(Ala. 1980) (wherein the Alabama Supreme Court found it to be reversible error for a police officer to give his opinion as to whether an individual was "an accomplice"); Harris v. State,39 Ala. App. 139, 99 So.2d 201, cert. denied, 266 Ala. 697,99 So.2d 204 (1957) (wherein it was held that a psychiatrist may not testify that a defendant is competent, sane, or responsible for his behavior, from a "legal" standpoint, where the defendant has pleaded insanity).
 "As stated in 20 Am.Jur., Sec. 799, supported by abundant citation of authority: 'It may be laid down as a general rule that a witness is never permitted to give his opinion on a question of law or upon matters which involve a question of law.' This rule is applicable to both expert and non-expert witnesses. See also Alabama Fuel Iron Co. v. Adams, Rowe Norman, 216 Ala. 403, 113 So. 265. The reason for such rule is that conclusions of law are exclusively for the courts."
Fiorella v. City of Birmingham, 35 Ala. App. 384, 388-89,48 So.2d 761, 766 (1950), cert. denied, 254 Ala. 515, 48 So.2d 768
(1950), cert. denied, 340 U.S. 942, 71 S.Ct. 506, 95 L.Ed. 680
(1951).
Whether the appellant was "in a condition to sign an informed consent" is a legal determination concerning the degree of the appellant's intoxication. Therefore, the trial court correctly sustained the State's objection.
 IV
The appellant argues that the trial court erred in denying his motion that the jurors be voir dired separately, outside the presence of other jurors. However, the trial judge did not abuse his discretion in denying the appellant's motion.Waldrop v. State, 462 So.2d 1021 (Ala.Cr.App. 1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1988);Edwards v. State, 452 So.2d 487 (Ala.Cr.App. 1982), reversed on other grounds, 452 So.2d 503 (Ala. 1983); Mu'Min v. Virginia, ___ U.S. ___, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991); Kuenzelv. State, 577 So.2d 474 (Ala.Cr.App. 1990), affirmed,577 So.2d 531 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 242,116 L.Ed.2d 197 (1991).
 V
The appellant argues that the trial court erred in denying his motion to prevent the State from striking prospective jurors who were favorable to him. Without citing any authority or making any specific allegations as to any incident, the appellant states: "[A]llowing the State of Alabama to strike witnesses from the jury which might be peers of the Defendant and be favorable to the Defendant in the trial of his case certainly violates the defendant's Sixth Amendment right to a trial by jury." The record indicates that, prior to trial, the following transpired concerning the appellant's motion:
 "[DEFENSE COUNSEL]: The other [motion] would be that the Defendant would make a motion that the State not *Page 142 
be allowed to strike jurors, potential jurors, that would be favorable to the Defendant.
"[PROSECUTOR]: I didn't catch the last part.
 "[DEFENSE COUNSEL]: That the State not be allowed to strike jurors that would be favorable towards the Defendant.
 "THE COURT: And would you mind sharing your knowledge with the Court as to how we would go about determining favorable?
 "[DEFENSE COUNSEL]: No, Your Honor, except that would be —
"THE COURT: Denied."
This motion was made prior to any striking of potential jurors by the parties. No further objections were raised on this ground by the appellant. Thus, because no error had occurred at the time of the appellant's motion and no subsequent objection was raised as to this matter by the appellant, we find no abuse of discretion by the trial court in denying this motion.
 VI
The appellant argues that the trial court erred in sustaining the State's objection to the appellant's comments to the jury. The record indicates that, during the direct examination of the appellant, the following transpired:
 "Q [BY DEFENSE COUNSEL]: Is there anything else that you want to address or want to say to the jury?
 "[PROSECUTOR]: Judge, I object to that. I mean this is not his forum for a public speech.
 "THE COURT: Sustained. If you'd like to ask a direct question, that's fine.
"[DEFENSE COUNSEL]: That's all I have, Judge."
The trial court has a duty to move the testimony expeditiously along. Williams v. State, 568 So.2d 354 (Ala.Cr.App. 1990).
 " 'The trial judge is vested with discretion in the conduct of a trial, and appellate courts will not interfere unless there has been an abuse of that discretion. The trial judge has a duty to move the testimony expeditiously along. Shelton v. State, 384 So.2d 869 (Ala.Cr.App.), cert. denied, 384 So.2d 871 (Ala. 1980).' Tombrello v. State, 421 So.2d 1319, 1322 (Ala.Cr.App. 1982). See also Thompson v. State, 503 So.2d 871, 878-79
(Ala.Cr.App. 1986), affirmed, 503 So.2d 887 (Ala. 1987), cert. denied, 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987).' "
Williams v. State, supra, at 356.
Whether to allow a witness to testify in narrative form, without being asked specific questions, is a matter for the trial court's discretion.
 "It is within the discretion of the trial court to permit the witness to narrate the matters and things observed by him without his being asked specific questions. If, for example, a witness testifies that he saw the automobile accident in question, the trial court has the discretion to allow or disallow a request that the witness be instructed to: 'Just tell the jury in your own words how the accident happened, as you saw it.' If the witness engaging in the narrative type of testimony relates inadmissible matter, then, of course, the other party may object and enter a motion that such matter be stricken.
 "The question of whether to allow a witness to testify by narrative, rather than through the customary question-and-answer, is vested within the discretion of the trial judge in federal practice.
See C. Gamble, McElroy's Alabama Evidence § 121.07 (4th ed. 1991). In the present case, the trial court stated to the defense counsel: "[I]f you'd like to ask a direct question, that's fine." We find no abuse of discretion by the trial court.
 VII
The appellant argues that the trial court erred in overruling his objection to the trial court's jury instructions on the free exercise of religion. Specifically, the appellant alleges that the trial court instructed the jury that the appellant's religious beliefs were protected by the Alabama Constitution, but were no defense to the charges against him. As we have previously concluded (see part II of this opinion), the appellant's religious beliefs did not constitute *Page 143 
a defense to this offense and, therefore, the trial court did not err in so instructing the jury.
 VIII
The appellant argues that the trial court erred in overruling his objection to allowing the State the opportunity to rebut the appellant's closing argument. The appellant refers to the "procedure by which the State of Alabama is allowed to make the final argument to the jury," which he alleges violates his right to a fair trial. The appellant cites no case law in support of his argument. Because the State of Alabama brings the charges against the accused and is required to meet the burden or proof as to the charged offense, the State is typically allowed the final argument before the jury. The conduct of the trial is a matter vested within the discretion of the trial judge, Williams v. State, supra at 356, and we find no abuse of discretion in the present case.
The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
All Judges concur.