Bertha Moore sued the City of Decatur and Dale Adams, in his individual capacity; Adams is a state trooper and a narcotics agent for the Alabama Bureau of Investigation ("ABI"). Moore alleged that she had been injured during the execution of a search warrant at her home. Her complaint alleged false imprisonment, the tort of outrage, trespass, assault and battery, negligence, and wantonness, and alleged that she had suffered emotional distress. The defendants filed motions for summary judgment based upon claims of discretionary-function immunity, § 6-5-338, Ala. Code 1975. The trial judge entered a summary judgment for the defendants; Ms. Moore appealed. We affirm.
Rule 56, Ala.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, a reviewing court must view the evidence in the light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541
(Ala. 1985); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784
(Ala. 1981). Rule 56 is read in conjunction with the "substantial evidence rule" (§ 12-21-12, Ala. Code 1975), for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must create a genuine issue of material fact by presenting "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
On January 9, 1997, ABI Agent Dale Adams obtained a search warrant from Judge Billy Cook, of the Decatur Municipal Court, in connection with an ABI investigation concerning the sale of crack cocaine in Decatur. During the investigation, Agent Adams had instigated "controlled *Page 632 
buys" by an informant; on two occasions the informant had purchased crack cocaine from someone at Bertha Moore's house, located on 12th Avenue in northwest Decatur. After the second buy, Agent Adams obtained a warrant to search the house. Agent Adams believed that the house number was 308; the house next door was marked 306. Ms. Moore admitted in her deposition that there was no number on her house. After obtaining the search warrant, Agent Adams requested the assistance of Decatur police in executing it. Agent Adams told the Decatur police officers that the person the ABI was looking for, Thomas Tucker, was on probation for shooting a man in the face and that there was a chance that Tucker was armed. The search warrant was executed at approximately 9:00 p.m. on the same day it was issued. The officers found Thomas Tucker in the residence, in possession of crack cocaine, a 9-millimeter handgun, and three marked $20 bills that had been used to purchase crack cocaine from Tucker earlier that day.
The plaintiff contends that the search warrant was invalid, because the actual address of her house was 312 12th Avenue, Northwest, but the house number on the warrant was 308. The affidavit attached to the search warrant identifies the house as follows: "308 12th Avenue Northwest, Decatur, Morgan County, Alabama, the same is described as a one story dwelling that is green in color, that is under the control of black male Thomas Tucker." When the warrant was executed, Agent Adams told the law-enforcement officers that it was the fourth house on the right, north of 2d Street, on 12th Avenue, Northwest; that it was a green-colored house; and that the house was directly adjacent to 306 12th Avenue, Northwest. The failure to give the correct street number of a house in a search warrant is not so material a variance as to make the warrant invalid if the arresting officer has been to the house, knows the location exactly, and therefore can clearly determine, from the face of the warrant, the location to be searched. State v. Graham, 571 So.2d 1267 (Ala.Crim.App. 1990). The house searched met the description in the warrant, not only in configuration and color, but also by the presence of Thomas Tucker, who was inside but who was clearly visible to the officers outside before they entered to execute the warrant. In arguing that the warrant was invalid, the plaintiff relies onFinch v. State, 479 So.2d 1314 (Ala.Crim.App. 1985). However, the present case is clearly distinguishable. In Finch, the house located at the number listed on the warrant was not the house to be searched and the officer executing the warrant was not familiar with the residence that was to be searched.
The defendants made a showing that they were engaged in the execution of a valid search warrant, a discretionary function. Discretionary acts have been defined as those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take, and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances. Wright v. Wynn, 682 So.2d 1, 2 (Ala. 1996), citing L.S.B. v. Howard, 659 So.2d 43 (Ala. 1995). Upon that showing, the burden shifted to the plaintiff to establish that the defendants acted fraudulently, in bad faith, or with malice or willfulness, in order to deny the defendants the immunity from suit otherwise provided them by § 6-5-338. Wright v. Wynn, supra.
The evidence before the trial judge included the affidavit of Agent Dale Adams, in which he stated:
 "I was in charge of the execution of the warrant. I demanded entry at the residence by stating `Police! Search Warrant! We demand entry.' This was stated several times. Nobody opened the door. I could plainly see Mr. Tucker from my position at the door. Mr. Tucker was wearing a red and black jacket. I yelled a third time `Police! Search Warrant! Open the door!' *Page 633 
There was no response from the interior of the house. After demanding entry the third time, Mr. Tucker disappeared from view [sic]. At that point, I ordered the use of an entry device, commonly called a `battering ram.'[1] My purpose in ordering the entry device was my belief that Mr. Tucker was trying to obtain a weapon. Based on my personal investigation of Mr. Tucker, it was my opinion that he was a dangerous and violent person and may employ a deadly weapon against the other officers or me. Officer Hames was ordered to open the door and he did so. The door opened about 18-24 inches with no apparent damage to the door. We went inside and were immediately confronted by Mr. Tucker. I grabbed Mr. Tucker to arrest him for felony possession of a controlled substance. Mr. Tucker and I struggled briefly, but I was able to handcuff Mr. Tucker. During my struggle with Mr. Tucker, a black female later identified as Bertha Moore, came running out of the front bedroom screaming `Get out of my house! You got no right to be here, I'm going to sue you.' She kept repeating this and advancing toward Officer Hames and me. At that point, Officer Hames told her to move back and sit down in a chair and not to interfere. I informed her we had a search warrant for her house and we were searching for drugs. During the search, narcotics were found on Mr. Tucker and in the immediate vicinity of Tucker. Also, a 9 m/m Ruger pistol was located in the room where Tucker was arrested. Also, three twenty ($20) bills used to purchase drugs from Mr. Tucker that day were found on Mr. Tucker. (I had recorded the [serial numbers of the bills] prior to purchase of the drugs.)
 "After about 30 minutes . . ., the search was concluded. No one was injured nor was any property damaged or destroyed. The entire search was conducted in a professional manner by state and local law enforcement officers. The search was conducted pursuant to a valid warrant issued by a judge having proper jurisdiction."
Also before the trial court was Ms. Moore's testimony by deposition, as follows:
 "I'm on the phone sitting on the couch. A loud knock hit the door. I said, `Thomas, somebody is knocking on this door, hard,' just like that. I got up coming to the door going to see who it was, but before I got to the door the next knock the door flew open. When the door flew open, I could see nothing but white men, guns, and I guess they knocked me down, and I was laying on the floor, and when I looked up, I could see them looking down on me. I guess they thought they had killed me. I got up. I was scared. I said, `Y'all didn't have to do this.' I said, `I was just fixing to open my door,' just like that.
 "Then they start searching the house, went all in the rooms. There wasn't no light in the kitchen. They was all in my refrigerator. `What is this in this pot?' — trying to make fun, like `What is this in this pot?' I don't know who they was. . . . I said, `Y'all get out of my pot,' just like that. . . . They were trying to be funny. Okay.
". . . .
 "Oh, they know they upset me. I was just scared to death. . . ."
The plaintiff further testified that after this incident she visited an emergency room and there described her problems as "blood pressure and nerves."
Significantly, the plaintiff does not controvert that portion of Agent Adams's affidavit wherein he states that he announced the officers' presence and states that after three times demanding entry the agents used force to enter. This case is therefore distinguishable from Wright v. Wynn, supra, in that the evidence presented to the trial judge in this case did not establish a *Page 634 
factual dispute that would have allowed a jury to determine whether the defendants were entitled to the protection of the discretionary-immunity doctrine. The plaintiff has produced no "substantial evidence" indicating that the defendants' conduct was "so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith." Couch v. City of Sheffield,708 So.2d 144, 153 (Ala. 1998); Wright v. Wynn, supra. The judgment of the trial court is due to be affirmed.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Lyons, Brown, Johnstone, and England, JJ., concur.
See, J., concurs in the result.
[1] See § 15-5-9, Ala. Code 1975.