782 So.2d 244 (2000)
Ex parte Paul DUVALL and Paul Marusich.
(Re David Lawrence v. Paul Duvall and Paul Marusich).
1982307.
Supreme Court of Alabama.
October 27, 2000.
*245 William A. Gunter, asst. atty. gen., Department of Conservation and Natural Resources, for petitioners.
J. Myron Smith, Prattville, for respondent.
BROWN, Justice.
Paul Duvall and Paul Marusich, the defendants in a civil action pending in the Elmore Circuit Court, petition for a writ of mandamus directing Judge Ben A. Fuller to grant their motion for summary judgment. They contend that they are entitled to a judgment on the basis of their claimed governmental immunity.
Paul Duvall is a conservation enforcement officer with the Alabama Marine Police Division of the Alabama Department of Conservation and Natural Resources. On or about December 19, 1997, Officer Duvall traveled in his state vehicle to Paul Marusich's house on Cotton Blossom Road in Millbrook, in order to pick up a number of hunter-education booklets that Marusich had in a vehicle assigned to him by the State. Marusich, a conservation enforcement officer with the Game and Fish Division of the Alabama Department of Conservation and Natural Resources, was off duty at the time. Duvall was on duty and was dressed in his marine police uniform, which included a badge and a gun belt.
While Duvall and Marusich were standing in the front yard, an automobile driven by 19-year-old David Lawrence passed in front of Marusich's house. Inside the car with David Lawrence were Lawrence's brother and three other young men. According to Marusich, one of the passengers made an obscene hand gesture toward Marusich's children, who were also in the front yard.[1] Cotton Blossom Road was a cul de sac, so Marusich knew the car would have to pass by his house again in order to reach a thoroughfare. Marusich asked Duvall to help him stop the car when it came back by his house. Marusich said he wanted to find out who was in the car, why they were in the neighborhood, and why they had made the gesture toward his children. Marusich also said there had been some recent acts of vandalism in the neighborhood.
As the car driven by Lawrence passed by, Duvall motioned for the driver to stop. The evidence conflicts as to what happened then. Lawrence stated that he and his passengers drove down Cotton Blossom Road in order to pick up a friend who was *246 going with them to play football in Coosada. Lawrence said he left the friend's home and then proceeded back up Cotton Blossom Road; that as he approached the Marusich house, Duvall stepped into the street and motioned for him to stop the car; that he stopped his car; that Duvall went to the front passenger side of the car and asked Lawrence's brother why he was riding through the neighborhood making obscene gestures; and that Marusich began yelling at Lawrence from farther away. According to Lawrence, he believed Duvall was wearing a fireman's uniform. Lawrence said that Duvall asked him more than once to produce his driver's license. Lawrence also said that he questioned why Duvall wanted to see his driver's license, and that he then reached in his pocket. According to Lawrence, Duvall then grabbed his left arm, pulled him from the car, pushed him down on the hood of his car, handcuffed him, and told him he was under arrest.
Duvall stated that he placed Lawrence under arrest in order to ensure his safety and the safety of Officer Marusich. According to Duvall and Marusich, after Lawrence was handcuffed, his demeanor changed and he apologized for being disrespectful to the officers. Duvall ran a check on Lawrence's license and discovered no outstanding citations or other "holds." Duvall then removed the handcuffs and allowed Lawrence to leave.
In May 1998, Lawrence sued Duvall and Marusich, alleging assault, unlawful arrest, false imprisonment, and conspiracy. Additionally, Lawrence claimed that Duvall and Marusich had acted under color of state law to deprive him of his constitutional rights, by claiming to be state law-enforcement officers.
Duvall and Marusich moved for a summary judgment, arguing that they were entitled to discretionary-function immunity and/or qualified immunity. On September 2, 1999, the trial court denied Duvall and Marusich's motion for summary judgment. On September 30, 1999, Duvall and Marusich filed this petition for the writ of mandamus.
The denial of a motion for summary judgment based on a claim of immunity is reviewable by petition for writ of mandamus. Ex parte City of Gadsden, 781 So.2d 936 (Ala.2000).
"The writ of mandamus is an extraordinary remedy and one petitioning for it must show `(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). See Ex parte Davis, 721 So.2d 685, 689 (Ala. 1998), where this Court stated that `[a] petition for a writ of mandamus is the proper means for achieving appellate review of a trial court's denial of absolute and discretionary-function immunity.'"
Ex parte Kelley, 739 So.2d 1095, 1096 (Ala. 1999).
Duvall and Marusich argue that they are protected from Lawrence's claims by the doctrine of State-agent immunity. They cite § 6-5-338, Ala.Code 1975, in support of their claim. That statute provides:
"(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other *247 peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."
Are Duvall and Marusich "peace officers" within the meaning of § 6-5-338? Conservation enforcement officers, as a general rule, are empowered to enforce this State's game and fish laws. See §§ 9-2-86, 9-11-5, Ala.Code 1975. However, § 33-5-5, Ala.Code 1975, states:
"In addition to all other power heretofore granted by law, marine police officers and all other Department of Conservation and Natural Resources enforcement officers shall have the power of peace officers in this state and may exercise such powers anywhere within the state."
Thus, a conservation enforcement officer has the authority to arrest an individual for violating a criminal statute. See Maxwell v. State, 587 So.2d 436, 439 (Ala.Crim. App.), cert. denied, 587 So.2d 440 (Ala. 1991) (marine police officer checking boat registration had authority to arrest occupant of the boat for possession of marijuana that was in plain sight).
In Ex parte Cranman, [Ms. 1971903, June 16, 2000], ___ So.2d ___ (Ala.2000), this Court traced the evolution of State-agent immunity, restated the law of State-agent immunity, and proposed a new test for determining when State employees sued in their individual capacities were entitled to the benefits of State-agent immunity:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity

*248 "(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
___ So.2d at ___. Although Cranman was only a plurality decision, this Court subsequently adopted that proposed test in Ex parte Butts, 775 So.2d 173, 177-78 (Ala. 2000).
The first question we must decide is whether Duvall and Marusich were engaged in a discretionary function when they arrested Lawrence. "Discretionary functions have been described by this Court as being `those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.'" Ex parte City of Montgomery, 758 So.2d 565, 569 (Ala.1999) (quoting Wright v. Wynn, 682 So.2d 1, 2 (Ala.1996)). See also Moore v. Adams, 754 So.2d 630, 632 (Ala.1999). However, acts taken in bad faith, or willful or malicious conduct, will not be considered discretionary in nature. Couch v. City of Sheffield, 708 So.2d 144, 153 (Ala.1998); Wright v. Wynn, 682 So.2d at 2; see also Barnes v. Dale, 530 So.2d 770 (Ala.1988); DeStafney v. University of Alabama, 413 So.2d 391 (Ala. 1981).
Duvall and Marusich's act of arresting Lawrence was clearly a discretionary function. There is no hard and fast rule concerning when there is probable cause to arrest a person pursuant to § 32-5A-4, Ala.Code 1975, for refusing to comply with a lawful order or direction of a police officer. See Sly v. State, 387 So.2d 913 (Ala.Crim.App.), cert. denied, 387 So.2d 917 (Ala.1980) (although an officer does not have unbridled power to arrest for refusal to obey "any" order, an officer's "request" to see a driver's license constitutes a lawful order under § 32-5A-4). Given the evidence indicating Marusich knew of recent acts of vandalism in the neighborhood, and given the evidence that Marusich did not recognize the Lawrence car as belonging to someone living on the cul de sac, we conclude that Duvall and Marusich were justified in performing an investigatory stop to determine what Lawrence and his companions were doing in the neighborhood. Moreover, when Lawrence did not comply with Duvall's repeated requests to produce his driver's license, Duvall and Marusich had probable cause to arrest Lawrence. See Sly v. State, 387 So.2d at 915. Although the evidence contains slight discrepancies as to Lawrence's noncompliance with Duvall's request, the evidence nonetheless compels the conclusion that Duvall and Marusich had probable cause to arrest Lawrence.
Duvall and Marusich made a prima facie showing that they arrested Lawrence with probable cause and without bad faith or a malicious intent, and Lawrence did not refute this showing. We conclude that Duvall and Marusich's arrest of Lawrence was within the discretionary-function/State agent's immunity provided in § 6-5-338. Given this conclusion, we further conclude that Duvall and Marusich had a clear legal right to have a judgment entered in their favor. The trial judge is directed to vacate his order denying their motion for a summary judgment, and to enter a summary judgment for Duvall and Marusich on Lawrence's claims.
*249 PETITION GRANTED; WRIT ISSUED.
HOOPER, C.J., and MADDOX, J., concur.
HOUSTON, COOK, SEE, and LYONS, JJ., concur in the result.
JOHNSTONE, J., dissents.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. The defendants had no reasonable suspicion that would meet the criteria of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to stop the car, no right to order Lawrence to do anything, no probable cause to believe that Lawrence had committed any crime, and no right to arrest him. Thus they acted willfully and beyond their authority and therefore without immunity. Ex parte Cranman, [Ms. 1971903, June 16, 2000] ___ So.2d ___ (Ala.2000), and Ex parte Butts, 775 So.2d 173 (Ala.2000).
The record contains substantial evidence that the defendants' claim of suspicion is a mere pretext to protect them from liability for abusing their power to avenge what they perceived as an insult or breach of decorum. This pretext, like a pretextual reason for an insurer's refusing to pay a claim in a bad-faith-failure-to-pay case, or an employer's pretextual reason for discharging an employee in a wrongful-discharge case, presents an issue of fact to decided at trial. Ex parte Usrey, 777 So.2d 66 (Ala.2000); Motion Indus., Inc. v. Pate, 678 So.2d 724 (Ala.1996); Culbreth v. Woodham Plumbing Co., 599 So.2d 1120 (Ala.1992); National Sec. Fire & Cas. Co. v. Bowen, 417 So.2d 179 (Ala.1982); Bird v. Nail Air Freight, Inc., 690 So.2d 1216 (Ala.Civ.App.1996), cert. denied, 690 So.2d 1219 (Ala.1997); Carroll v. A.J. Gerrard & Co., 684 So.2d 128 (Ala.Civ.App.1995). The writ is not due.
NOTES
[1] Lawrence disputed this contention and offered evidence to the effect that the passenger was merely waving to someone he recognized from school.